JOHN B. HERON v. ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY
COMPANY and Others.[1]

Nos. 10,518—(166).

June 16, 1897.

**Railway—Lease—Negligence in Operation of Road—Liabilities of Lessor and Lessee.**

Under legislative authority, G. S. 1894, § 2714, the St. P., M. & M. Ry. Co. leased its road between St. Paul and Hinckley to the G. N. Ry. Co., granting to the latter company the exclusive control and possession of the road. The G. N. Ry. Co., also under legislative authority, G. S. 1894, § 2721, granted to the E. Ry. Co., which owned and operated a road between Hinckley and West Superior, the right to run its train over the road between Hinckley and St. Paul; the G. N. Ry. Co., however, retaining possession and control of the road. The G. N. Ry. Co. negligently permitted to accumulate and remain on the right of way combustible material which was liable to be ignited by sparks and fire thrown from passing engines. The E. Ry. Co. negligently operated an engine attached to one of its trains, by reason whereof sparks and fire escaped from the engine, and fell upon and ignited the combustible material on the right of way. The fire spread, and destroyed a large amount of property on the premises of adjacent landowners. *Held*:

(1) That the St. P., M. & M. Ry. Co. was not liable for the negligence of either the G. N. or the E. Ry. Co.; that the legislative authority to lease the road included by implication exemption from liability for the negligence of the lessee in operating the road, and not involving a breach of the public duties imposed upon the lessor by its charter or the general laws of the state.

(2) But the G. N. Ry. Co., which retained control and possession of the road, was liable for the negligence of the E. Ry. Co. in the operation of its train. Authority to grant to another company the privilege of running its trains over the road, the granting company retaining control and possession of the road, does not include by implication exemption from liability for the negligence of the company to which the privilege is granted.

**Same—Concurrent Negligence.**

Even if the G. N. Ry. Co. was not liable for the negligence of the E. Co. in the operation of its train, it would nevertheless be liable on the ground that the injury was caused by the concurring negligence of the two companies,—of the E. in the operation of its train, and of the G. N. in permitting combustible material to remain on the right of way.

[1] Reported in 71 N. W. 706.

This action against the Eastern Railway Company, the St. Paul, Minneapolis & Manitoba Railway Company and the Great Northern Railway Company, was brought to recover for damages sustained by plaintiff resulting from fires started by the negligent operation of its trains by the first named company.   From orders of the district court for Mille Lacs county, Baxter, J., overruling separate demurrers of the Manitoba and Great Northern Companies, they appealed.   Affirmed as to the latter defendant, and reversed as to the former.

*Wm. R. Begg*, for appellants.

The allegations in the complaint that it was and is the duty of the Manitoba and Great Northern Companies to keep the right of way free from combustible materials and to see that locomotives passing over the road were properly equipped, kept in repair and skillfully operated, are merely conclusions of law and are not admitted by demurrer.   Ritchie v. McMullen, 159 U. S. 235; Lumley v. Wabash, 71 Fed. 21; Clark v. Hart, 98 Ky. 31; Fish v. Farwell, 160 Ill. 236;  England v. Russell, 71 Fed. 818.   There is no allegation in the complaint that the alleged negligence of the Manitoba and Great Northern Companies in failing to keep the right of way free from combustible material caused or contributed to cause the damage complained of, and no matter how gross that negligence may have been, unless it caused wholly or in part the injury or damage complained of, it is not actionable.   Bennett v. Missouri, 11 Tex. Civ. App. 423; Sheridan v. Bigelow, 93 Wis. 426.   The alleged negligence of these companies in permitting grass and leaves to accumulate on the right of way is not the proximate cause of the injury and damage complained of.   The negligent management and defective condition of the locomotive operated by the Eastern Company is the immediate and proximate cause.   This independent act of negligence committed by a third party intervening between the negligence of appellants and the injury occasioned is the cause to which the damage must be attributed.   St. Joseph v. Hedge, 44 Neb. 448; Milwaukee v. Kellogg, 94 U. S. 469; Merchants v. Wood, 64 Miss. 661; Texas v. Woods, 8 Tex. Civ. App. 462; Grimmer v. Pennsylvania, 175 Pa. St. 1; Morier v. St. Paul, 31 Minn. 351. The Manitoba Company, having parted with possession and con-

trol of the railroad and right of way, is in no wise liable for the condition of the right of way or other appurtenances and appliances. Ahern v. Steele, 115 N. Y. 203. The lease by the Manitoba Company to the Great Northern Company and the license or agreement between the Great Northern Company and the Eastern Company were authorized by statute. G. S. 1894, §§ 2714 and 2721. This being so, the Manitoba Company is not liable for the torts of the Great Northern or the Eastern Company and the Great Northern Company is not liable for the torts of its licensee, the Eastern Company. Arrowsmith v. Nashville, 57 Fed. 165; 3 Wood, Ry. Law, § 490; Nugent v. Boston, 80 Me. 62; St. Louis v. Curl, 28 Kan. 622; Fort v. Fortney, 51 Kan. 287; Ditchett v. Spuyten, 67 N. Y. 425; Miller v. New York, 125 N. Y. 118; Ahern v. Steele, supra; and see, also, Hukill v. Maysville, 72 Fed. 745; Harper v. Newport, 90 Ky. 359; East v. Culberson, 72 Tex. 375; Hanna v. Chattanooga, 88 Tenn. 310; City v. Mores, 80 Md. 348; Georgia v. Friddell, 79 Ga. 489; Virginia v. Washington, 86 Va. 629.

*J. L. Brady* and *S. L. Pattee*, for respondent.

It is the duty of a railway company to keep its right of way reasonably free from combustible matter and whether the allegations in the complaint to that effect are statements of fact or conclusions of law is immaterial. Salmon v. Delaware, 38 N. J. L. 5; Watt v. Nevada, 23 Nev. 154; Eddy v. Lafayette, 163 U. S. 456; Clarke v. Chicago, 33 Minn. 359; 8 Am. & Eng. Enc. Law, 14. The complaint sufficiently alleges that the damage complained of was caused by the negligence of the appealing defendants in failing to keep the right of way free from combustible matter. Louisville v. Hanmann, 87 Ind. 422; Louisville v. Krinning, 87 Ind. 351; Pittsburgh v. Jones, 86 Ind. 496; Ohio v. McCartney, 121 Ind. 385; Chicago v. Burger, 124 Ind. 275. See, also, Eddy v. Lafayette, supra; Solum v. Great, 63 Minn. 233. The alleged negligence of appellants in permitting grass and leaves to accumulate upon the right of way is the proximate cause of the injury and damage complained of. Undoubtedly the negligence of the Eastern Company is the original and primary cause, but the negligence of the other defendants is equally proximate. It is not necessary that the injury should be the inevitable or necessary consequence of the

wrongful act or omission, but only that it should be the natural or probable result.   Miller v. St. Louis, 90 Mo. 389.   A railway company may be liable upon proof of negligence in not keeping its right of way clear of combustible matter, regardless of the condition or operation of its locomotives.   Clarke v. Chicago, 33 Minn. 359;  Bowen v. St. Paul, 36 Minn. 522;  Smith v. London, L. R. 6 C. P. 14;  Eddy v. Lafayette, supra;  Jones v. Michigan, 59 Mich. 437;  Gram v. Northern, 1 N. D. 252;  Haugen v. Chicago, 3 S. D. 394;  Toledo v. Endres, 57 Ill. App. 69;  Kellogg v. Chicago, 26 Wis. 223;  Kelsey v. Chicago, 1 S. D. 80;  Louisville v. Miller, 109 Ala. 500;  Hycock v. Raleigh, 89 N. C. 321.  Notwithstanding the lease by the Manitoba Company to the Great Northern and the operation by the latter pursuant to such lease, the Manitoba Company remains liable for the negligence of its lessee in permitting combustible matter to accumulate upon the right of way and also for the negligence of the Eastern Company as to the running of its engine and the manner of running it, even if such lease was authorized by statute, there being no statutory exemption from such liability, and for the same reason the Great Northern Company is liable for the negligence of the Eastern Company as to the condition and operation of its engine, citing Freeman v. Minneapolis, 28 Minn. 443;  Singleton v. Southwestern, 70 Ga. 464;  Harmon v. Columbia, 28 S. C. 401;  Driscoll v. Norwich, 65 Conn. 230;  Logan v. North, 116 N. C. 940;  Balsley v. St. Louis, 119 Ill. 68;  Green v. Coast, 97 Ga. 15;  Pennsylvania v. Ellett, 132 Ill. 654;  Cholette v. Omaha, 26 Neb. 159;  Nelson v. Vermont, 26 Vt. 717;  Independent v. Western, 6 Inter. C. Com. 378;  Bouknight v. Charlotte, 41 S. C. 415;  Braslin v. Somerville, 145 Mass. 64;  Railroad v. Brown, 17 Wall. 445;  Central v. Morris, 68 Tex. 49;  Tillett v. Norfolk, 118 N. C. 1031;  Hycock v. Raleigh, supra;  Ingersoll v. Stockbridge, 8 Allen, 438;  Railroad v. Barron, 5 Wall. 90;  Macon v. Mayes, 49 Ga. 355;  McCoy v. Kansas, 36 Mo. App. 445;  Chicago v. Meech, 59 Ill. App. 69, 163 Ill. 305;  Pittsburg v. Campbell, 86 Ill. 443;  Galveston v. Burnett, 37 S. W. 779;  Central v. Phinazee, 93 Ga. 488.   The liability of the appellants for the torts of their lessee or licensee is not limited to the violations of the duties or obligations imposed upon them as common carriers, but extends to violations of all duties or obligations

which are owed to the public. Driscoll v. Norwich, 65 Conn. 230; Harmon v. Columbia, 28 S. C. 401; Logan v. North, 116 N. C. 940; Balsley v. St. Louis, 119 Ill. 68; Pittsburgh v. Campbell, supra; Galveston v. Burnett, supra; Naglee v. A. & F., 83 Va. 707; and see particularly Freeman v. Minneapolis, 28 Minn. 443.

MITCHELL, J. The material allegations of the complaint are as follows:

The St. Paul, Minneapolis & Manitoba Railway Company owned a line of railway between St. Paul and the village of Hinckley. The Eastern Railway Company owned and operated a line of railway between Hinckley and West Superior. The first-named company had leased its road to the Great Northern Railway Company for 999 years. Under this lease the Great Northern Railway Company was operating the road, and had possession of the right of way on which the road was built. The Eastern Railway Company was operating and running its trains over this same road under a license from or an agreement with the Great Northern Railway Company. It was the duty of the St. Paul, Minneapolis & Manitoba and the Great Northern Railway Companies to keep the right of way free from grass, leaves, and other combustible material which might be ignited by sparks or fire from passing engines, and to see that all engines passing over the road were properly constructed, kept in good repair, and carefully handled. The two last-named companies negligently suffered large quantities of grass, leaves, and other combustible material to accumulate on the right of way. The Eastern Railway Company negligently ran and operated over the road owned by the St. Paul, Minneapolis & Manitoba Railway Company and leased by the Great Northern Railway Company, an engine which was defectively constructed, out of repair, and negligently handled, by reason whereof large quantities of sparks and fire were thrown from the engine, which fell upon and ignited the dry grass, leaves, and other combustible material already referred to on the right of way, which fire spread, and ran over upon the adjacent lands, and destroyed the property for which a recovery is sought in this action against all three defendants.

The St. Paul, Minneapolis & Manitoba and Great Northern Railway Companies interposed separate demurrers to the complaint, each upon the ground that it did not state a cause of action. Each company appealed from an order overruling its demurrer.

We construe the allegations of the complaint as meaning that under the lease from the St. Paul, Minneapolis & Manitoba Railway Company the Great Northern Railway Company has and is entitled to the exclusive control and possession of the leased road, including the entire right of way; that, although the Great Northern Railway Company has given the Eastern Railway Company a license to run its trains over the road between St. Paul and the village of Hinckley, the Great Northern Railway Company itself still retains control and possession of the road, including the right of way. The allegation that it was the duty of the St. Paul, Minneapolis & Manitoba Railway Company to keep the right of way free from grass, leaves, and other combustible material, and to see that the engines run over the road were properly constructed, kept in repair, and carefully handled, is a mere conclusion of law, based evidently upon the assumption that the duty continued notwithstanding its lease and surrender of possession and control of the road to the Great Northern Railway Company. The allegation that it was the duty of the Great Northern Railway Company to see that all engines run over the road were in safe condition and properly handled is, as to engines operated by the Eastern Railway Company, also a mere conclusion of law, based on the assumption that such duty still rested upon it notwithstanding its agreement with that company, and irrespective of any personal negligence of its own, for none is alleged; there being no allegation that the Great Northern Railway Company had any knowledge that the engine of the Eastern Railway Company was in a defective and unsafe condition, or was being negligently handled. It is also to be noted that the acts complained of constitute merely a breach of duty to adjacent property owners in the manner of operating the road, and not a breach of any duty owing to the public by the railway companies as common carriers. The lease of the road by the St. Paul, Minneapolis & Manitoba Railway Company to the Great Northern Railway Company was expressly authorized by statute. G. S. 1894, § 2714. So, also, was the agreement between the Great Northern Railway Company and the Eastern Railway Company under which the latter ran its trains over the road, the

two roads constituting a continuous and connected line between St. Paul and West Superior.  G. S. 1894, § 2721.

1. We shall consider first the liability of the St. Paul, Minneapolis & Manitoba Railway Company.  There is a conflict of authorities upon the question whether a company which leases its railroad to another company under authority of law is liable for the negligence of the lessee in operating the road under the lease. Some courts hold that the lessor is liable unless the statute which grants the right to lease expressly exempts the lessor from liability; that there can never be an exoneration from liability by implication; while others hold that the lessor is exonerated from liability for the negligence of the lessee in operating the road where the lease is authorized, although the statute authorizing it does not contain any express provision relieving it from liability. In our opinion, upon both principle and authority the latter is the better doctrine.  It it unnecessary to review the authorities on the subject, as most of them will be found collated in the text-books. See 2 Elliott, R. R. § 467 et seq.  The reasons in support of this position are well and forcibly stated by Judge Elliott as follows:

"It must be assumed that in granting the authority to execute a lease the legislature had in mind former statutes as well as the established rules of the common law.  When power to execute a lease is conferred upon a corporation, the legislature must, in the absence of countervailing language, be deemed to intend to authorize the execution of such an instrument as the established law regards as a lease.  The law enters as a silent factor into every contract, and hence of every lease it is an important element.  The legal effect of a lease is to transfer for a prescribed period of time the possession and control of the property to the lessee.  In authorizing the execution of a lease the legislature grants the right to execute and carry into effect such an instrument as devests the lessor of possession and control, and places it in the lessee to the exclusion of the lessor.  The possession of the one party is excluded and that of the other is made complete by legislative sanction. * * * It cannot be doubted that a statute conferring general authority to sell means a complete and effective sale, and upon the same principle it must be concluded that the power to lease, unless qualified and limited by statute, is a power to make a complete and effective lease.  A complete and effective lease certainly vests the right of possession, control, and management in the

lessee, since no other effect can be assigned such a lease without a direct and palpable violation of long and well established prin- ciples of law. * * * In granting authority to lease, the legisla- ture empowers the lessor company to transfer the duty of operat- ing the road to the lessee, and in doing what the legislature au- thorizes no rule of public policy is violated. * * * The courts which assert the theory mentioned [that there must be an express exemption from liability in order to exonerate the lessor] tacitly assume that in granting authority to lease the legislature granted something less than an authority to lease. We believe that the only theory that can be defended on principle is that in granting authority to execute a lease the legislature conferred authority to execute an effective instrument with all the qualities and incidents with which the law invests a lease. If this be true, then the lease does not transfer possession and control from the one party to the other for the term of the lease, and the rights and obligations of the parties are such, and such only, as the law annexes to the rela- tion of lessor and lessee." 2 Elliott, R. R. § 469.

The learned author is speaking, as we understand him, solely with reference to negligence of the lessee in the operation of the road, and not attributable to a breach of any public duty of the lessor company; and we shall only add to what he has said that as to such acts, whether of omission or commission, there is no rea- son of public policy why the rights and obligations of the lessor and lessee should be held to be different from those which the law annexes to any other lease. We therefore hold that upon the facts alleged the St. Paul, Minneapolis & Manitoba Railway Com- pany is not liable, and its demurrer to the complaint should have been sustained.

2. The remaining question is whether the facts pleaded state a cause of action against the Great Northern Railway Company. The plaintiff seeks to hold it liable on two grounds: First, that it owed the absolute duty to see that the Eastern Railway Company operated its trains over the road in the exercise of reasonable care; and, second, that it owed the duty of exercising reasonable care in keeping its right of way free from combustible material which was liable to be ignited by sparks from passing engines. Inas- much as the Great Northern Railway Company retained posses- sion and control of the road, including the right of way, there can be no doubt that the latter duty devolved on it; and for any in-

juries resulting from its neglect to perform that duty it is liable. But counsel contends: First, that there is no allegation that the negligence of the Great Northern Railway Company in failing to keep its right of way free from combustible material caused or contributed to the injury complained of; and, second, that upon the facts alleged the negligence of the Eastern Railway Company in the operation of its engine was the sole proximate cause of the injury. In this, we think, counsel is in error.

The complaint alleges that the Great Northern Railway Company negligently permitted this combustible matter to accumulate and remain upon the right of way, and that it was this combustible matter which was ignited by the fire which escaped from the engine of the Eastern Railway Company. It is true that if that company had not been negligent in the operation of its engine the negligence of the Great Northern Railway Company in regard to its right of way might not have resulted in injury; and it may also be true that but for the negligence of the Eastern Company in the operation of its train the negligence of the Great Northern Railway Company in regard to its right of way would not have resulted in injury. But, nevertheless, the negligence of each was a proximate cause of the injury. The negligence of the Eastern Railway Company in the operation of its train was not the intervention of a new and independent agency which broke the causal connection between the negligence of the Great Northern Railway Company and the injury. The negligence of the latter was a cause of the injury, and not a mere condition or occasion of it. On this ground, if on no other, the demurrer of the Great Northern Railway Company was properly overruled.

But, in view of a trial on the merits, it is expedient to consider whether that company is liable for the negligence of the Eastern Railway Company in the operation of its train. It is generally laid down by the text writers that a railroad company which permits another to make a joint use of its road is liable to a person injured by the negligence of the company to which the permission is granted. 2 Elliott, R. R. § 477. But it must be admitted that the authorities usually cited in support of this proposition do not make it very clear upon what precise principle this rule rests,

or what limitations, if any, there are to the rule. In many of them, like Railroad v. Barron, 5 Wall. 90-104, the statement of facts is so meager that it is impossible to tell whether the lease or trackage agreement was or was not under legislative authority, or whether that fact was considered material. In some of the cases it affirmatively appears that the lease or agreement for the joint use of the track was without legislative authority; and, of course, it goes without saying that a railroad company cannot, without legislative authority, devest itself of responsibility for the torts of persons operating its road. In other cases the statute giving authority to lease the road, or grant a joint use of it, to another company, expressly provided that the proprietor company should be liable for the negligence of the lessee or licensee. In other cases the proprietor company knew of the negligent habits of its lessee or licensee, and negligently failed to take steps to prevent it. In still other cases the injured party was a passenger of the proprietor company, and the injury was the result of the unsafe condition of the road, caused by the negligence of the lessee or licensee.

We admit that we have not found any case holding the lessor or licensor company liable where the facts were the same as in the present case; that is, where the agreement for the use of the road by another company was with legislative authority, and the injury resulted from the negligent operation of its train by the lessee or licensee, and the party injured was a stranger to both companies, bearing no contractual relation to either. But, on the other hand, we have found no case holding that the lessor or licensor company is not liable under such circumstances. There are one or two cases where the party injured was the servant or employe of the lessee or licensee company, in which it was held that the lessor or licensor company was not liable; but such cases are controlled, and differentiated from others, by the contractual relation between the party injured and the party guilty of the negligence. In view of this condition of the authorities, we are at liberty to consider the question on principle.

We start with the proposition that a railroad company is liable for the negligence of its lessees or licensees in the operation of its road unless it is relieved therefrom by legislative exemption, ex-

press or implied. In case of a lease, made with legislative authority, which gives the lessee the exclusive control and possession of the road, we have just held that such exemption is necessarily implied. The fact that the lease transfers to the lessee this control and possession, thus putting it out of the power of the lessor to interfere with or regulate the operation of the road, is an influential, if not the controlling, consideration for holding that this legislative exemption is implied. In the present case the Great Northern Railway Company retained the possession and control of the road, merely giving the Eastern Railway Company the right to run its trains over it. Again, the grant of authority is of the most general nature, to-wit:

"Any two or more railroad corporations whose lines are so connected may enter into any arrangement for their common benefit consistent with, and calculated to promote, the objects for which they were created." G. S. 1894, § 2721.

Under this authority a railroad company could make almost any sort of trackage arrangement, not inconsistent with the provisions of its charter, with any other connecting road it saw fit. In view of the very general as well as indefinite character of this authority, we do not think that we would be justified in reading into this statute by implication an exemption of the proprietor company, retaining control and possession of the road, from liability for the negligence of another company to which it may have granted the privilege of running its trains over the road. There are very serious practical objections to doing so. To say nothing of the fact that the company to which such privilege is granted might be insolvent, many cases might arise where it would be impossible to ascertain which of the two or more companies using the road was immediately guilty of the negligence causing the injury.

In conclusion we may add that in holding that the St. Paul, Minneapolis & Manitoba Railway Company is not liable the decision must be understood as limited to the facts of this case. If the acts complained of involved a breach of the public duties which are imposed upon that company as a quasi public corporation by its charter and the general laws of the state, other con-

siderations of public policy would be involved, which might present a different question.

Order overruling the demurrer of the St. Paul, Minneapolis & Manitoba Railway Company is reversed, and the order overruling the demurrer of the Great Northern Railway Company is affirmed.