CENTRAL TRUST CO. OF NEW YORK et al. v. DENVER & R. G. R. CO.

(Circuit Court of Appeals, Eighth Circuit. October 23, 1899.)

No. 1,216.

1. RAILROADS—USE OF TRACK IN COMMON—MUTUAL DUTIES AND LIABILITIES.

Where a railroad company leased to another company the right to use a portion of its track, and thereafter each company ran its trains over such track, in charge of its own employés, although they united in employing a joint superintendent and train dispatchers, the use by each was in common with the other, and not a joint use, and each was bound to the use of due care to avoid injury to the trains of the other, and liable to the other for such an injury resulting from the negligence of its servants. Such duty and liability also rested upon a receiver operating the trains of one of the companies under a continuation of the agreement.

2. SAME—LIABILITY FOR TORTS OF LESSEE.

A railroad company, which has leased to another company the right to use, in common with itself, a portion of its track, is liable to its own passengers and shippers for injuries received by reason of the negligence of the servants of its lessee in the operation of trains upon such track.

3. SAME—CLAIMS AGAINST RECEIVER—MODE OF ESTABLISHING.

Where a collision occurred between a railroad train being operated by a receiver and a train of another company, through the negligence of the receiver's servants, and the damages sustained by the other company are readily ascertainable by the court, it is proper to adjudicate and allow

its claim therefor on a petition of intervention filed in the suit in which the receiver was appointed, without requiring it to be litigated and established in an action at law.

**4. SAME—EFFECT OF SALE OF ROAD.**
In such case, the fact that before the hearing of such claim the road in the hands of the receiver has been sold does not affect the right of the court to determine and allow the claim in the matter of the receivership, where the sale was made subject to the right of the court to charge the purchaser with all liabilities incurred by the receiver before delivering possession of the property; the purchaser being made a party, and permitted to make any defense which the receiver might have urged.

**5. SAME—EVIDENCE—MODE OF MAKING PROOF.**
In passing upon items of damage claimed in such proceeding, it being a matter relating to the administration of the receiver, it is proper for the court to recognize the methods of proof commonly accepted as satisfactory by railroad companies in cases of such losses.

**6. SAME—ALLOWANCE OF INTEREST.**
The allowance of interest on the claims allowed from the date when the decision was filed on which the decree was afterwards entered was within the discretion of the court.

**7. SAME—CONDITIONS OF DECREE.**
A provision of the decree requiring the purchaser of the road, who had assumed liability for all claims against the receiver, on notice from the intervener of any future claim made against it on account of such collision to compromise and settle such claim or defend against it, paying any judgment rendered thereon against the intervener, was proper.

Appeal from the Circuit Court of the United States for the District of Colorado.

On and prior to December 24, 1889, the Denver & Rio Grande Railroad Company (herein called the "Denver Company") owned and operated a line of railroad from Denver through Pueblo, Leadville, and Newcastle to Rifle Creek, in Colorado; and the Colorado Midland Railway Company (called herein the "Midland Company") owned and operated a line of railroad from Colorado Springs to Newcastle. The said railroad companies, being desirous of extending their respective railroads to a connection with the Rio Grande Western Railway at Grand Junction, Colo., on that day entered into a written agreement whereby the Denver Company leased to the Midland Company, for the term of 50 years, an undivided moiety of the railroad of the Denver Company between Newcastle and Rifle Creek, a distance of about 13 miles; and on the same day the same two companies entered into a written agreement with the Rio Grande Junction Railway Company, which was then building a section of railroad from Rifle Creek to Grand Junction, to lease such section of railroad for 50 years. The said Denver Company and Midland Company thenceforth operated the division of railroad between Newcastle and Grand Junction in common, each running its own passenger and freight trains thereon, with its own employés, and neither having any share or interest in the business of the other. For convenience and safety, they united in employing a joint superintendent, who had the charge and direction of the movements of all trains and engines on that division of railroad, and employed train dispatchers, and also had charge of repairs, replacements, and improvements thereon, as directed by said two companies. About December, 1893, the Midland Company was merged into the Colorado Midland Railroad Company, and later this suit was begun to foreclose a mortgage upon all the properties of said last-named company, and in its progress the appellant George W. Ristine was appointed sole receiver of such railroad company, and directed by the court to operate said division of said railroad under said lease and agreement; and the operation thereof was continued in all things as theretofore. Pursuant to decree of foreclosure in this suit, the entire railroad property covered by said mortgage was, on September 8, 1897, duly sold to Frederic P. Olcott, subject to the payment, satisfaction, and discharge by the purchaser of all liabilities incurred by said receiver before the delivery to the purchaser of the

possession of said mortgaged property, and reserving to the court the power to retake such property in case the purchaser, his successors or assigns, should fail to comply with any order of the court in respect to the payment and discharge of such liability, and providing also for the transfer of such obligation to any new corporation to which the railroad property might be transferred. The said sale was duly ratified and confirmed by order of the court in this suit on the 11th day of September, 1897, and on October 30, 1897, said Frederic P. Olcott conveyed and transferred said railroad property, subject to said condition of sale, to the Colorado Midland Railway Company, a new corporation, which assumed said obligation (and is called herein the "New Midland Company"); and on the 1st day of November, 1897, all of said railroad property was by said receiver delivered to said New Midland Company, under the terms of said sale.   On the morning of September 10, 1897, at about 14 minutes after midnight, the passenger train No. 1 of the Denver Company, going west, consisting of an engine and eight cars, was, when moving at a high rate of speed, between one and two miles west of Newcastle, on the railroad of said Denver Company between Newcastle and Rifle Creek, met at a curve on said railroad by a freight train of said receiver, George W. Ristine, going eastward on the same single track, causing a violent collision, in which the engine and most of the cars of said passenger train were wrecked, and the gas pipes on such cars broken, so that the gas escaped, ignited, and exploded, causing further wreckage, and, by setting said passenger cars on fire, destroyed much property on the said passenger train, as well as the engine and many of the cars. Several of the employés and passengers on the same train were killed, and many others wounded and injured.   The said passenger train was running on its proper time, as directed by said joint superintendent, and the persons in charge of that train were free from fault, and the said collision, wreckage of engine and cars, loss of life, and injury to persons, and destruction of property, were wholly chargeable to the gross negligence and misconduct of the conductor and engineer of said freight train of said receiver, which was run contrary to the directions of said joint superintendent and his train dispatchers.   The Denver Company filed its petition in intervention in this foreclosure suit to recover the damages it had sustained through said collision; and for which the receiver, as such, was alleged to be liable, and the receiver and the said New Midland Company were made parties to such intervention, and appeared therein, and contested the claims of the intervener.   After issue, and reference to a special master, upon his report and the evidence taken by him the circuit court made the decree in favor of the intervener, which is appealed from.

Henry T. Rogers (Lucius M. Cuthbert, Daniel B. Ellis, George C. Preston, and Pierpont Fuller, on the briefs), for appellants.

Henry F. May (Edward O. Wolcott and Joel F. Vaile, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

The section of railroad between Newcastle and Rifle Creek upon which the collision occurred was the railroad of the intervener, the Denver Company, and in its possession and use at the time of the collision.   The so-called "lease," as interpreted and acted upon by the parties to it, gave to the Midland Company trackage rights for its trains over this section of railroad, upon the terms agreed upon. The appointment of a joint superintendent to control the movement of trains and engines over that section and the adjoining section to Grand Junction, also used in common by the two railroad companies, with authority to employ subordinate train dispatchers,

97 F.—16

was a proper provision to insure the care necessary to prevent collisions, while obtaining the fullest use of the single track by both companies; and it was matter of convenience to intrust supervision over the condition, repairs, and improvements of that division of railroad to such superintendent. As each company operated its own trains by its own servants in the prosecution of its own separate business, in which the other company had no interest, the use by each company was in common with the other company, and not a joint use; and each company, in the operation of its trains, was bound to use reasonable care, under the circumstances, to avoid injury to the trains of the other company. The findings of the special master as to the practice in the settlements for live stock killed on the line between Newcastle and Grand Junction were not immaterial, as they tended to show the practical interpretation of the so-called "lease" by the parties, and the character of the actual possession and use of that section of railroad.

The receiver had taken the place and assumed the rights and obligations of the Midland Company in respect to that section of railroad, and was, as receiver, responsible to the Denver Company for all the damages sustained by that company from the said collision and the explosion of gas and conflagration which immediately resulted therefrom; such collision being caused wholly by the negligence of the servants of said receiver in the management of the said freight train. As the Denver Company then owned, possessed, and operated with its own trains the railroad between Newcastle and Rifle Creek, on which this collision occurred, it was liable to its own passengers, and to the owners of property carried by it on its passenger train, for injuries and losses from the collision, explosion, and fire, though caused wholly, as aforesaid, by the negligence of the receiver's servants while running his freight train upon that section of railroad with the permission of the Denver Company. Railroad Co. v. Barron, 5 Wall. 91, 104. See, also, Heron v. Railway Co., 68 Minn. 542, 71 N. W. 706. The damages sustained by the Denver Company were, therefore, not only the loss of its own property destroyed or injured, but included also the amounts it had to pay for the immediate care of its injured passengers, and of the remains of such as were killed, and the amounts it was required to pay its passengers, and owners of property on its passenger train, in satisfaction for their injuries and losses from the collision. This disposes of all assignments of error which question the right of the intervener to have any relief.

On reviewing the action of the circuit court as to the specific items of damage allowed to the intervener, it should be borne in mind that the court was not simply engaged in the adjudication of issues between ordinary litigants. In this foreclosure suit it had taken possession of the railroad property, and was operating the railroad by its receiver, and was thus exercising administrative functions, temporarily, in connection with and in aid of the foreclosure suit. The damages claimed in this intervention against the receiver because of the torts of his employés in the movement of one of his trains would, if allowed, be classed as operating expenses

of the railroad under the receiver. 20 Am. & Eng. Enc. Law, 385. The court, in considering these claims, was supervising the action of its own receiver in the administration of the business of the railroad, and, for the purpose of directing his action, could properly ascertain his liabilities according to the business methods customarily adopted by careful and prudent railroad corporations under like circumstances, avoiding needless delays and vexatious and expensive litigation, where the right of the matter was obvious to the court, and where it could see that no real dispute as to facts existed. The fact that before the hearing a sale of the railroad property had been made upon the condition referred to did not change the nature of the proceeding further than to make it necessary that the New Midland Company, because of its assumption of ultimate responsibility, be made a party to the intervention, with the right to present any objections or defenses against the claims which the receiver might have urged. The intervention was still a proceeding in the matter of the receivership in the foreclosure suit. as much as if the railroad, at the time of the hearing, was still in the hands of the receiver; and the court, if clearly satisfied that the receiver was liable, and that the showing fixed the amount of a claim beyond doubt or serious contention, would properly allow it, without the delay and expense of formal litigation. If a claim were for unliquidated damages,—as for personal injuries from a moving train of the receiver, the amount being in dispute, as well as allegations of negligence and of contributory negligence,—it would, from its nature, have to be determined by a jury in an action at law, as was done in Thompson v. Railway Co., 35 C. C. A. 357, 93 Fed. 384, although any judgment obtained by the claimant could only be satisfied in the intervention in the foreclosure suit. The same course would have to be taken, as to the trial of such a claim, if the receivership were still active. But it would have been an abuse of the power of the court in this case, where the right of recovery was clear, had it required or permitted extended and expensive litigation as to claims. the amounts of which were readily ascertainable upon the showings at the hearing, satisfactory to the court, and unquestioned as to accuracy.

The errors assigned upon the allowance of particular items are generally but repetitions or amplifications of the general objections going to the right of the intervener to recover any damages. As to the claim for damages to rolling stock, $27,771.31, it was, on the hearing before the special master. agreed and admitted that petitioner's Exhibit No. 7, which specified such damages aggregating that sum, was a true statement of the damages to rolling stock of the intervener as the result of the collision, explosion, and fire, and that the intervener was responsible to the Pullman Company and the Rio Grande Western Company for their coaches named in that statement. This admission left no issue as to the amount of that claim. And the same is true in respect to the item of $205.43, paid by the intervener to the United States on account of registered mail matter and equipment destroyed by the collision and fire, it having been admitted at the same hearing that the amount was rea-

sonable, and the proof of payment by the intervener sufficient. As to the claim for $1,240.75 paid by the intervener to its passengers, named in its petition, in settlement of their respective claims for personal injuries and loss of baggage, the receiver, in his answer, admits that at the time of the making of such settlement he conceded that the amounts were reasonable for the passengers to receive on account of such losses and injuries. And so in respect to the other items making up the aggregate of $31,863 allowed by the special master, and also by the court, it is enough to say, without going further into details, that the evidence sufficiently showed that they consisted of settlements for damages to property carried on intervener's train, and in payments of expenditures made necessary by and resulting from the collision; all of which were actually and properly paid by the intervener. Neither the fact of payment by the intervener nor the reasonableness of the amount was questioned. The general holding that the receiver was liable to the intervener disposed of all contention as to these items. The item of $999.11, for moneys to that amount paid by the intervener to owners of express matter carried on intervener's passenger train, and destroyed in the collision and fire, was properly allowed by the court. It was not questioned that the intervener had paid that amount, upon proofs which, though ex parte, were such as are customarily accepted as satisfactory by railroad companies in cases of such losses. No suspicion as to the accuracy and correctness of such proofs was suggested. The liability of the receiver being clear, and the losses and their amounts appearing by customary proofs, not contested or questioned as to accuracy, on which the payments by the intervener had been made, there was no real issue in respect to the item to require or justify any litigation, delay, or expense. In supervising the administration of the receiver in respect to this item, the court rightfully recognized and acted upon the methods in use in the common course of carrying on the business of such railroads, and the proofs, which might and should have been accepted as satisfactory by the receiver, on which to recommend to the court the allowance of the item, had he still continued in the active operation of the railroad. Upon the hearing in this intervention it was as much within the discretion of the court to accept such uncontroverted customary proofs, when satisfied of the correctness of the same, and thus avoid needless expense and delay, as if the railroad were then still under the management of its receiver.

The allowance of interest from July 14, 1898, the day when the decision of the court was filed on which the decree was afterwards entered, was made by the judges who rendered the decision and also signed the decree, and was within the discretion of the court. Frazer v. Carpet Co., 141 Mass. 126, 4 N. E. 620.

The provision in the decree requiring the Colorado Midland Railway Company, upon notice from the intervener of any claim made against it on account of said collision, wreck, explosion, or conflagration, to compromise and settle such claim or defend against the same, paying any judgment rendered thereon against the interven-

er, with interest, costs, and reasonable counsel fees, is a proper provision for the satisfaction of the liabilities of the receiver in conformity with the condition of the foreclosure sale above referred to.

The decree of the circuit court is affirmed, with costs.