## SOUTHERN RY. CO. v. HUSSEY.
### No. 8717.

Circuit Court of Appeals, Eighth Circuit.
June 26, 1930.

Charles A. Houts, of St. Louis, Mo. (Samuel B. McPheeters, of St. Louis, Mo., and H. N. Quigley, of Cincinnati, Ohio, on the brief), for appellant.

William H. Allen, of St. Louis, Mo. (Jesse W. Barrett, Ellison A. Poulton, and Mark D. Eagleton, all of St. Louis, Mo., on the brief), for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and OTIS, District Judge.

STONE, Circuit Judge.

This is an appeal from a judgment for personal injuries.

Appellee received the injuries while a passenger on appellant's train through a collision between that train and a freight train of the Evansville, Indianapolis & Terre-Haute Railway Company, caused by an open switch leading off from appellant's main line to the track of the other railroad on which the freight train was standing.

There was a contract between the two roads under which the Evansville Road constructed and maintained the switch and was permitted to run its trains four or five miles from the switch along the main line of appellant to a nearby town. Such a contract was authorized by the statutes of Indiana, where the switch was located.

The action was formed on the theory of res ipsa loquitur. Appellant answered that it was the duty of the Evansville Road to install and maintain the switch and connected signal light and that such were being so maintained at the time of the accident; that appellant's train approached the switch at night with the switch signal light indicating a safe track, but that in fact the switch was turned; that through some defect or insufficiency in the signal light and the controlling mechanism, the light failed to truthfully disclose the open switch to defendant's engineer; and that such unsafe condition could not have been discovered by its agent in charge of the train.

The undisputed facts are that appellee was a passenger on a west-bound passenger train of appellant. Near Princeton, Ind., the line of the Evansville, Indianapolis & Terre Haute Railway Company connected with the main line of appellant by a switch. This switch was installed and maintained by the Evansville Company under a contract requiring such and permitting use by that company of a few miles of this main line from the switch to a nearby town. This switch was equipped with a signal post which designated when the switch was open or closed. The post was connected with the switch so that it would co-operate. The switch was operated by a lever on the opposite side of the main line and on the side where the Evansville track entered. The train struck the open switch and collided with the Evansville train standing on the connecting track.

A bare outline of appellant's evidence of how the accident happened is as follows: After midnight, a freight train of the Evansville Company stopped in the neighborhood of the switch. The conductor and two brakemen went to the switch, near which was a telephone booth, from which the conductor called the station agent to ascertain if he could safely enter and proceed on appellant's main line to the nearby town. Receiving favorable information, he instructed one of the brakemen to throw the switch. Thereafter, he sent that brakeman to the engineer to see if he could safely attempt the trip. The engineer thought he could not and the brakeman returned and so reported to the conductor. They noticed the signal showed the green light for the main line—indicating a closed switch. Neither the conductor nor either of the brakemen examined the switch nor closed it, but sat down near it to await the passage of appellant's train. After the accident the signal was examined, and it was found that a lug connecting the switch rod with the bottom of the signal post had fallen off. The bottom of the post was square and the lug fitted over it with a set screw. There was no countersink in the post for the screw, but it could be screwed against the post. There was a new crack in the lug. The screw was rusted in place. The screw was all that prevented the lug dropping off. A freight train had passed along the main line shortly before. Appellant had inspected the switch shortly before. There was a conflict as to whether this method of attaching the lug was standard. If a bolt hole had been made in the bottom of the post, a bolt could have been screwed in and prevented the lug falling.

Appellant presents here four propositions, one of which (excessive damages) is not open for consideration. Public Utilities Corporation v. McNaughton, 39 F.(2d) 7, this court.

I. Appellant contends that if the accident occurred through the negligence of the Evansville Road in leaving the switch open, appellant could not be held liable therefor. It seeks to argue the case on the basis of the absence of responsibility of a railroad lessor for the acts of its lessee. There are a number of cases bearing on the liability of two railroads which have contracts with each other involving the maintenance and/or operation of a designated property. These cases, at first glance, seem to be and in some instances are in conflict, or, at least, in confusion. The confusion in the cases seems to have arisen from the difficulty of laying down an all inclusive rule which can apply to the facts and circumstances of all cases. There are various considerations which may intrude and govern the particular case. Some of these are: Whether there is legislative authority for the contract; the nature of the contract (that is, a complete lease of *all* operation, maintenance and control, a mere running right; a partial control, etc.); the nature of the occurrence or condition causing the accident; the relation of the injured person to the lessor or lessee; and possibly other considerations. However, one thing is beyond dispute. That is, that if the lessor carrier owes a clear legal duty to the person injured, that duty cannot be avoided or lessened by any arrangement which that carrier may make with any other person. If any part of that duty is delegated to another, then that other becomes the agent of the carrier, in that respect, and the carrier is responsible for its acts.

Here, the appellant owed the appellee the duty of exercising the highest degree of care in transporting him. That care applied to everything which might affect that safe transportation, including the maintenance and operation of all appliances having to do therewith. It is clear that this accident happened in connection with this switch—either because of defective appliance or because of the operation of that appliance by the railroad given, by appellant, the right to operate it. The duty of the appellant toward its passengers was to use the highest degree of care to keep that switch safe for the transportation of such passengers over it. Neither as to the maintenance nor as to the use of that switch, can the appellant avoid this duty of

care. It cannot delegate the duty of maintaining a proper switch appliance so as to lessen its duty in that regard. Equally, it cannot delegate the operation of that appliance so as to lessen its duty.

The case of Illinois Cent. R. R. v. Barron, 5 Wall. 90, 104, 18 L. Ed. 591, is directly in point and determines this contention adversely to appellant. In that case, there was a running agreement and, as here, a passenger was injured because of the operation of the other road. thereunder. Therein, the court said, very shortly, that the matter had been settled "in the courts of Illinois," and further said, "and we think rightly." Also, it said: "The same principle has been affirmed in other States." The court referred to three Illinois decisions (Chicago, St. Paul & F. R. R. Co. v. McCarthy, 20 Ill. 385, 71 Am. Dec. 285; Ohio, etc., R. R. Co. v. Dunbar, 20 Ill. 623, 71 Am. Dec. 291; Chicago & R. I. R. R. Co. v. Whipple, 22 Ill. 105) and two decisions from other states (Nelson v. R. R., 26 Vt. 717, 62 Am. Dec. 614; McElroy v. R. R., 4 Cush. [Mass.] 400, 50 Am. Dec. 794). Appellant contends that this decision was one merely following the State law; that there being no state statute permitting leases of its line by carrier such a lease was void and had no effect upon the liability of the lessor. This view, however, leaves out of consideration the expression in the opinion, "and we think rightly." To avoid this language of approval, appellant contends that such goes no further than approval of the reason for the Illinois decision and that such reason was that the contract with the other carrier had been made without legislative consent, citing the Dunbar Case. It is true that the Dunbar Case so holds. In that case the railroad had leased its entire road and equipment to another, free from all control, and it was in operation by the lessee that a live stock shipment was damaged by delay. The only reason or ground for holding the lessor was as stated by counsel. But the McCarthy Case was where one constructing a part of the railway, under contract, had failed to keep up fences, in consequence of which, stock had escaped and damaged the property of plaintiff. There was there no question of legislative consent, but the decision was based expressly upon the duty of the railroad and the agency of the contractor. The Whipple Case was an injury through operation by contractors who were constructing the road. Therein, the court held that neither as servants (under the McCarthy Case) nor as lessees (under the Dunbar Case) could the liability be escaped

by the railroad. Thus it is clear that when the Supreme Court cited these three cases it plainly indicated no intention to base its approval upon the principle of the Dunbar Case alone but, also, had in mind the announcements in the McCarthy and Whipple Cases. The Vermont case was one of failure to properly fence a right of way operated by a lessee under a long time lease and was placed on the lack of power to escape liability by such lease. The Massachusetts case is on all fours with the case before us. There the Legislature had authorized a specific switch connection between two roads and a passenger on the older road had been injured by the operation of the switch by an employee of the other road—the latter road being in control of such operation by contract. The court there said (page 402 of 4 Cush.):

"As passenger carriers, the defendants were bound to the most exact care and diligence, not only in the management of the trains and cars, but also in the structure and care of the track, and in all the subsidiary arrangements necessary to the safety of passengers. The wife having contracted with the defendants and paid fare to them, the plaintiffs had a right to look to them, in the first instance, for the use of all necessary care and skill. The switch in question, in the careless or negligent management of which the damage occurred, was a part of the defendants' road, over which they must necessarily carry all their passengers; and although provided for and attended by a servant of the Concord Railroad Corporation, and at their expense, yet it was still a part of the Nashua and Lowell railroad, and it was within the scope of their duty to see that the switch was rightly constructed, attended and managed, before they were justified in carrying passengers over it."

It is therefore clear that the approval in the Barron opinion could not have been based solely upon lack of legislative consent to a lease. The case of Central Trust Co. of N. Y. v. Denver & R. G. Ry. Co., 97 F. 239 (this court), affirming Central Trust Co. of N. Y. v. Colorado Midland Ry. Co. (C. C.) 89 F. 560, is in point. In that case the Denver & R. G. R. Company leased running rights over a portion of its track to the Midland. A passenger train of the Denver was wrecked by a collision with a freight train of the Midland on that track. The fault was entirely that of the Midland. The Denver sought recovery for amounts paid out to its passengers and for express matter as well as for damage to its equipment. The opin-

ion below is by Judge (later Justice) Brewer, who said (89 F. 563):

"Without going further into detail, or enlarging upon minor matters, these thoughts have led my mind to the conclusion that the trainmen of the Midland Company running the train which caused this collision were still the servants and employees of the Midland Company, for whose misconduct and negligence that company is liable; and, although the Denver Company, as a carrier of passengers, will be, and rightfully is, primarily responsible to those passengers, and also to those who placed express matter on its train, yet, as between the two companies, the obligations of the contract justify and require that the Midland Company shall respond to the Denver Company for whatever pecuniary loss it has sustained by that collision."

On appeal this court said (97 F. 242):

"As the Denver Company then owned, possessed, and operated with its own trains the railroad between Newcastle and Rifle Creek, on which this collision occurred, it was liable to its own passengers, and to the owners of property carried by it on its passenger train, for injuries and losses from the collision, explosion, and fire, though caused wholly, as aforesaid, by the negligence of the receiver's servants while running his freight train upon that section of railroad with the permission of the Denver Company. Railroad Co. v. Barron, 5 Wall. 91, 104 [18 L. Ed. 591]. See, also, Heron v. Railway Co., 68 Minn. 542, 71 N. W. 706. The damages sustained by the Denver Company were, therefore, not only the loss of its own property destroyed or injured, but included also the amounts it had to pay for the immediate care of its injured passengers, and of the remains of such as were killed, and the amounts it was required to pay its passengers, and owners of property on its passenger train, in satisfaction for their injuries and losses from the collision."

Also, see Washington, A. & G. Railroad Co. v. Brown, 17 Wall. 445, 451, 21 L. Ed. 675; Kansas City S. Ry. Co. v. Nectaux, 26 F.(2d) 317, 319 (C. C. A. 5); Denver & R. G. R. Co. v. Roller, 100 F. 738, 745, 49 L. R. A. 77 (C. C. A. 9); New York, N. H. & H. R. Co. v. Baker, 98 F. 694, 697, 50 L. R. A. 201 (C. C. A. 2).

Appellant relies upon a statement in Illinois Cent. R. Co. v. Sheegog, 215 U. S. 308, 317, 30 S. Ct. 101, 102, 54 L. Ed. 208, as follows: "Now, whether we agree with it or not, the doctrine is familiar that, in the absence of statute, a railroad company cannot get rid of the liabilities attached to the exercise of its franchise by making a lease," as throwing doubt upon the Barron Case. But the court did not cite or mention the Barron Case, and we cannot see such effect in the quoted language. Chicago Rys. Co. v. Kramer, 234 F. 245, 249 (C. C. A. 7).

Reliance is placed, also, on Arrowsmith v. N. & D. R. Co. (C. C.) 57 F. 165, where the opinion was by Judge (later Justice) Lurton. But the Barron Case is expressly distinguished and held inapplicable in that case because the Barron Case "was one of joint use by two companies, the permissive use being without express authority of law" (page 176 of 57 F.). This quotation is urged in support of the view that the Barron Case rested entirely upon the lack of legislative power to lease. That was not, as shown above, the sole basis although one of the bases of the Barron decision. However, that was the ground in the Barron Case which was a distinguishing mark to the issue in the Arrowsmith Case.

Necessarily, our conclusion is that appellant is liable to appellee for the negligence, if any, of the Evansville Company.

II and III. The second and third matters argued are insufficiency of the evidence to justify submission, respectively, as to the negligence of appellant and as to the negligence of the Evansville Company. These two propositions may be handled together. This was a res ipsa loquitur case involving the highest degree of care. In many jurisdictions it seems that no directed verdict can be made in such a case and that rule has been weakened only slightly in this circuit. In the case of Dierks Lumber & Coal Co. v. Brown, 19 F.(2d) 732, this court said that the presumption arising from the doctrine of res ipsa loquitur would take the case to the jury "unless the entire evidence is such that the presumption cannot stand against it," and the case was reversed there on the ground that the circumstances of that case clearly rebutted the presumption. The controlling issue in that case was whether the defendant had known of a defect in its electric wiring system long enough to remedy the same and the evidence of the *plaintiff* showed clearly that the defect had not existed as much as an hour and that it was such character of defect as not to manifest itself before the accident. In short, it is not enough that the evidence of the defendant would, if true, be sufficient to rebut the presumption, because it is for the jury to pass

upon the credibility of the witnesses and the truth of the testimony, but the circumstances must be such that no jury would be justified in rejecting such evidence and no court in sustaining a verdict so doing.

■ As to the Evansville Company, the evidence here might or might not be negligence. That negligence consisted in opening the switch and leaving it open. There were three employees of that road (the conductor and two brakemen of the freight train) who had to do with the switch, the conductor being in charge. The circumstances are that a while after the switch was opened, the conductor and the brakeman (who had opened the switch) each looked at the light and it evidenced that the switch had been closed, while the second brakeman, who was with them near the switch, made no satisfactory explanation as to why he did not close the switch. It was a fair question whether any of these three men exercised the highest degree of care in protecting the switch.

■ The direct negligence of the appellant was in the maintenance of a safe appliance at the switch so that the switch light would turn to indicate the condition at that point. It was a vital matter that the switch light should indicate this condition, and the evidence showed that the appliance had been long in use and could very easily have been made safer, and that if it had been so constructed, the accident would not have occurred. All of the witnesses, except one, who testified to either negligence, were interested (in the sense of being employees of one of the railroads), and the exception was of a man who had been employed at that time and was one of the brakemen at the switch. Under these circumstances, the issues were properly submitted to the jury, and the judgment should be, and is,

Affirmed.