## TERMINAL R. ASS'N OF ST. LOUIS v. STAENGEL.

### No. 11935.

Circuit Court of Appeals, Eighth Circuit.

July 30, 1941.

Rehearing Denied Aug. 30, 1941.

Writ of Certiorari Denied Nov. 10, 1941.

See 62 S.Ct. 181, 86 L.Ed. ——.

Arnot L. Sheppard, of St. Louis, Mo. (Carlton S. Hadley and Walter N. Davis, both of St. Louis, Mo., on the brief), for appellant.

Roberts P. Elam, of St. Louis, Mo. (Mark D. Eagleton, of St. Louis, Mo., on the brief), for appellee.

Before STONE, WOODROUGH, and JOHNSEN, Circuit Judges.

STONE, Circuit Judge.

This is an appeal by defendant from a judgment for plaintiff in a personal injury action brought under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60.

Two issues are submitted here. The first has to do with submission of the case to the jury under the res ipsa loquitur doctrine and, particularly, in view of appellant's contention that its evidence compelled a directed verdict for it. The second concerns application of Rule 51 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

I. Submission to the Jury.

This issue involves examination of the fact situation. A very concise outline of how this accident occurred is as follows. Plaintiff had been employed by defendant for many years as a switchman in its yards. Sometime after nine o'clock on the night of October 20, 1939, he was acting as rear switchman on a string of twenty odd freight cars being hauled from East St. Louis, Illinois, to defendant's Ewing Avenue switch yards in St. Louis, Missouri. He was sitting on an end sill at the rear end of the last car—which was an unusually long car heavily loaded with sand. In the course of its movement through the St. Louis yards before reaching the Ewing Avenue yards, the switch train was routed over the main line track (track 72) crossing various tower controlled and operated switches, one of which was known as switch 13. This switch connected a track leading to the 11th Street yards with main track 72. The various switches, including 13, were lined for this train so that it would go along track 72. Going at 20 to 25 miles per hour, all of the train passed over switch 13 on track 72 except the rear trucks of this last car (on which plaintiff was riding). When those trucks reached this switch, the wheels thereof went along the 11th Street track instead of following the train which had gone along track 72. With its front trucks on track 72 and its rear trucks on the 11th Street track, this rear car was caused to move increasingly sidewise for a few car lengths until it struck a steel pier (between these two tracks) supporting an elevated structure. When the rear trucks started along the 11th Street track at the switch, plaintiff noticed the "sign" (switch signal light) was set for the 11th Street track, which indicated that the switch was set for that track. Knowing the train should go along track 72, he realized that something was wrong and started to get up. Before he could do so, the car struck the pier, throwing him violently to the ground with the resultant injuries in suit here.

Appellant places its contention that a verdict should have been directed upon two bases: (1) that this is not a res ipsa loquitur case; (2) that, even if this be a res ipsa loquitur case, the entire evidence justified such direction since the evidence by appellant conclusively rebutted the inference or presumption raised by the prima facie case made by appellee.

(1) Res Ipsa Loquitur Case. If the legal relationship between the parties is (as here) such as to authorize, whether a case is one to which the rule of res ipsa loquitur is properly applicable depends upon the character of the occurrence causing the injury. The rule is applicable if the thing causing the injury was, at the time, under the exclusive control of defendant and the occurrence was such as, in the ordinary course of things, does not happen if the one having such exclusive control uses proper care (San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98, 32 S.Ct. 399, 56 L.Ed. 680).

Tested by the above considerations on the fact situation above outlined, this is a res ipsa loquitur case. This is directly ruled by Southern Railway Co. v. Bennett, 233 U.S. 80, 34 S.Ct. 566, 58 L. Ed. 860, which was a suit under the Federal Employers' Liability Act for the death of an employee (an engineer) by the fall-

ing of his engine through a burning trestle. It was there held that injury to an employee resulting from "defective instrumentalities" (page 85 of 233 U. S., page 566 of 34 S.Ct., 58 L.Ed. 860) could be recovered under the Act under the res ipsa loquitur rule. That is the precise situation here.

■ (2) *Appellant's (defendant's) evidence compelled directed verdict.* On this issue, appellant presents (a) a preliminary argument that verdict for defendant *may* be directed in a res ipsa loquitur case; and, then, (b) that its evidence here compelled such direction.

(a) The rule of law applicable here is to be found in the three cases, in this Court, of Dierks Lumber & Coal Co. v. Brown, 8 Cir., 19 F.2d 732; Southern Ry. Co. v. Hussey, 8 Cir., 42 F.2d 70, 74 A.L.R. 1172, and May Department Stores Co. v. Bell, 8 Cir., 61 F.2d 830.

As to whether a verdict may ever be directed for defendant in a res ipsa loquitur case, there is no precise decision in the Supreme Court. In this Court, the question is directly ruled in the Brown, Hussey and Bell cases. The Brown case declared that a verdict might be directed for defendant in a res ipsa loquitur case and such direction was, therein, ordered.[1] The Hussey and Bell cases made the same declaration but refusal to direct a verdict in each of those two cases was approved by this Court.

As to when a verdict should be so directed, the above three cases have announced the rule. As expressed in the Hussey case, 42 F.2d at pages 73, 74, it is as follows:

"*In many jurisdictions it seems that no directed verdict can be made in such a case and that rule has been weakened only slightly in this circuit.* In the case of Dierks Lumber & Coal Co. v. Brown, [8 Cir.] 19 F.2d 732, this court said that the presumption arising from the doctrine of res ipsa loquitur would take the case to the jury 'unless the entire evidence is such that the presumption cannot stand against it,' and the case was reversed there on the ground that the circumstances of that case clearly rebutted the presumption. The controlling issue in that case was whether the defendant had known of a defect in its electric wiring system long enough to remedy the same and the evidence of the *plaintiff* showed clearly that the defect had not existed as much as an hour and that it was such character of defect as not to manifest itself before the accident. *In short, it is not enough that the evidence of the defendant would, if true, be sufficient to rebut the presumption, because it is for the jury to pass upon the credibility of the witnesses and the truth of the testimony, but the circumstances must be such that no jury would be justified in rejecting such evidence and no court in sustaining a verdict so doing.*" (Italics inserted except as to word "plaintiff".)

While this particular matter was not determined therein, yet the situation in Southern Railway Co. v. Bennett, 233 U. S. 80, 34 S.Ct. 566, 58 L.Ed. 860, throws a useful sidelight on the impressive showing which a defendant must make in a res ipsa loquitur case. In that case, the defendant "offered precise evidence" (page 86 of 233 U.S., page 567 of 34 S.Ct., 58 L.Ed. 860) which, if believed, would have exculpated defendant but the case was held to be for the jury. Also, in the Hussey and the Bell cases, the same character of evidence was introduced by defendant and each case was held submissible. In the Dierks case, it was the evidence by *plaintiff* which was the sole basis for declaring the case not submissible (see comment on the Dierks case in Southern Ry. Co. v. Hussey, 8 Cir., 42 F.2d at page 73).[2]

---

[1] In the Brown case (as stated in the comment thereon in the Hussey case, quoted hereinafter) the direction of verdict resulted from the effect of the evidence of the *plaintiff*. In that case, plaintiff's evidence suggested that a certain broken wire had caused the accident but her evidence tended, also, to show that such break—if that were the cause—was so shortly before the accident that no negligence could be inferred from failure to discover and repair. Also, the opinion finds that the electrical shock (there received) was slight and that such shocks are sometimes received from electric appliances in good order (pages 737–739 of 19 F.2d).

[2] Appellant relies upon Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, Ann.Cas.1914D, 905, and particularly upon an expression therein (page 240 of 228 U.S., page 418 of 33 S.Ct., 57 L.Ed. 815, Ann.Cas.1914D, 905) as follows:

"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they fur-

**(b)** *Does this evidence compel directed verdict?* The inquiry is whether all the evidence here is so conclusive as to lack of negligence by defendant that, under the above rules of decision, a verdict should have been directed. If so, the evidence must furnish "an explanation" (San Juan Light & Transit Co. v. Requena, supra, 224 U.S. page 99, 32 S.Ct. page 401, 56 L.Ed. 680) of the occurrence which is so compelling that no verdict to the contrary should be allowed to stand.

The essentials of the evidence, not repeating that stated earlier in this opinion, are as follows: This switch was set for track 72 when the train entered it. All of the train passed over it onto track 72 except the rear trucks of the last car. Between the momentary time the front trucks of this last car passed over the switch and the rear trucks reached it, the switch changed to the 11th Street track. The foregoing is the evidence by both parties and by the physical facts. The evidence of defendant was that a few minutes after the accident, the switch was found set for track 72 and that no control had been or could have been exercised over the switch from the control tower after a part of the train passed this switch and entered on track 72. That the switch was operated solely from the tower by levers influencing a pneumatic device at the switch. That the switch was automatically locked by an electric circuit while a train was passing over it and as long as any part of the train was on the track 72 circuit connected to this switch. That this circuit extended for 300 feet beyond the switch. That the circuit might be insulated by sand on the rails but that such insulation would have to be for all wheels on one rail for the entire length of the train in the circuit. That the switch operated perfectly before and after this occurrence without repair and was found in entire working order upon inspection made very shortly after the happening. That the switch has worked perfectly ever since. In short, this evidence showed an abnormal action of the switch, which action defendant's evidence showed could not have happened with normal functioning and which defendant could not account for nor offer any explanation.

Even if we take all of this evidence as true, it is clear that there must have been some defect in these switch instrumentalities because it did shift to the 11th Street track within a very few seconds after the front trucks of this last car passed over it. Defendant offers no explanation for this switch action. Its only position is that the instrumentality was in order just before and just after the occurrence.

To justify directing a verdict, the Court must be compelled to the conclusion that reasonable minds could not differ as to the lack of negligence of defendant. This it must do here in the face of an actual occurrence conclusively showing defective operation of the switch which is entirely devoid of explanation. We have no doubt that such conclusion is not compelled. The evidence here does not bring this case within that slight weakening (announced by this Court in the Hussey case) of the rule that no verdict can be directed in a res ipsa loquitur case. It does not furnish the "explanation" required by the Requena case.

Appellant contends that the trial Judge must direct a verdict: "(1) if defendant's evidence is so overwhelmingly contrary to plaintiff's evidence that a verdict in plaintiff's favor would have to be set aside by the trial judge acting with sound discretion; or (2) if the defendant's evidence is uncontradicted, unimpeached and not contrary to natural physical laws (Small v. Lamborn, 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Pennsylvania R. R. Co. v. Chamberlain, 288 U. S. 333, 53 S.Ct. 391, 77 L.Ed. 819)."

Appellant insists the rule above stated

---

nish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in,

the question for the jury is whether the preponderance is with the plaintiff."

The point decided in that case was that the burden of proof was not shifted to defendant by the prima facie showing of plaintiff in a res ipsa loquitur case. Pages 238, 240, of 228 U.S., pages 417, 418 of 33 S.Ct., 57 L.Ed. 815, Ann.Cas. 1914D, 905. The meaning of the above quotation is simply that the prima facie case is rebuttable without shifting the burden of proof.

by it applies to res ipsa loquitur cases with undiminished vigor. We are given no citation to that effect and have found none. If this insistence be true, it is obvious that the practical usefulness of the res ipsa loquitur rule will be materially reduced. This is so because it would mean that a plaintiff would have to present evidence to overthrow every explanation of the occurrence by a defendant which would show lack of negligence. If plaintiff failed so to do, the evidence of defendant would stand uncontradicted and unimpeached, and, unless contrary to physical laws, would require a directed verdict. This he would have to do in the face of the sole reason for the res ipsa loquitur rule, which is that the knowledge of how the occurrence happened is peculiarly within the knowledge of defendant. To require a plaintiff to refute an explanation made by defendant where the knowledge as to the truth is peculiarly in possession of defendant would practically annihilate any usefulness of the res ipsa loquitur rule.

With the rarest exceptions (such as Dierks Lumber & Coal Co. v. Brown, supra), we think the rule is as announced in Gleeson v. Virginia Midland Railroad Co., 140 U.S. 435, 444, 11 S.Ct. 859, 862, 35 L.Ed. 458, as follows: "The law is that the plaintiff must show negligence in the defendant. This is done prima facie by showing, if the plaintiff be a passenger, that the accident occurred. If that accident was in fact the result of causes beyond the defendant's responsibility, or of the act of God, it is still none the less true that the plaintiff has made out his prima facie case. When he proves the occurrence of the accident the defendant must answer that case from all the circumstances of exculpation, whether disclosed by the one party or the other. They are its matter of defense. And it is for the jury to say, in the light of all the testimony, and under the instructions of the court, whether the relation of cause and effect did exist, as claimed by the defense, between the accident and the alleged exonerating circumstances."

Another consideration in connection with this contention of appellant concerns the evidence upon which appellant relies for a directed verdict. That evidence sums up to the following: the switch could be operated only from the switch tower; the switch worked perfectly before and after the occurrence; because of the electric locking device, it could not open; it did momentarily open—just long enough to allow these rear trucks to go off on the 11th Street track—and promptly closed again; what produced this abnormal action is not known; all switches, including this one, were reasonably inspected. The indisputable evidence that the switch did so change is directly opposed to the evidence that it was electrically locked and could not change. If it could so change, is it impossible to disbelieve the tower man who testified that he did not operate the switch and cause the change? More than twenty cars of this train and the front trucks of the rear car passed rapidly and safely over the switch and the accident was caused solely by a momentary shift of the switch with no evidence of any influence thereon by these rear trucks. The situation is most unusual. The jury might be justified in believing all or any part of this evidence and, therefrom, exculpating defendant. The trial court was not entitled to direct the jury that all of such evidence must be true and, much less, that it cleared defendant of all blame.

## II. Rule 51.

At the close of all evidence and before argument, appellant requested an instruction as follows:

"You are instructed that in a case of this character where, as I have already stated to you, you have a right, but are not compelled, to find for plaintiff by inferring the fact of some negligence on the part of defendant because of the facts and circumstances surrounding plaintiff's injury, nevertheless, if the defendant's evidence shows to you that there was no defect in its appliances involved in this case, or that if there was such defect, the defect was created or arose by circumstances beyond its control, or if you find that such defect existed, but had existed for so short a period of time that defendant could not reasonably have been expected to have been advised of it by the exercise of ordinary care on its part, then defendant has explained the occurrence and your verdict must be for defendant.

"In other words, the defendant may exonerate itself in one of the three ways last above mentioned, namely; (1) by showing there was no defect in the appliances mentioned in evidence; or (2) that if there was such defect, it arose and was created by circumstances beyond defendant's control; or (3) that such defect, if any there

was, had existed for so short a period of time that defendant could not reasonably be expected to have been advised of it by the use of ordinary care on its part."

This instruction was then refused. A portion of the charge given was as follows: "If you conclude from a greater weight of the evidence that the derailment was caused by the negligence of defendant, or any of its agents, servants or employees, and the plaintiff sustained injuries as a direct result of such derailment, your verdict will be for the plaintiff; but if on the consideration of all the evidence, including that offered by defendant, you are unable to say the greater weight of the evidence supports an inference that negligence of the defendant caused the derailment and plaintiff's injuries, or if you conclude there was no defect in the appliances involved, or if there was a defect but that it either was not caused by circumstances within the control of the defendant or it had not existed long enough for the defendant, exercising ordinary care, to have discovered and remedied it, your verdict should be for the defendant."

The record shows the following in connection with exception taken:

"Mr. Sheppard: I understood that one of my instructions based on the Dierkes case was refused and I did not argue those questions at all. That was my impression when we left your chambers. I certainly would have argued it very strongly if I had known you were going to give it, but I understood you were going to refuse it.

"The Court: The record should show that is the exact situation to possibly a limited extent; we discussed the instructions in chambers.

"Mr. Sheppard: Which one is that?

"The Court: That is Number—I do not believe it was numbered at the time we discussed it. I have since numbered it nine. We discussed the instruction in chambers. The instruction as a whole was considered erroneous and I clearly indicated that it would not be given. In considering the matter during the course of the argument it occurred to me that parts of that instruction were probably proper and I injected it into another instruction to the extent noted in the Charge. Of course, in fairness to you the record should show that you understood that the instruction as a whole would be refused. I knew of no way

to correct the situation after the argument had begun.

"Mr. Sheppard: What I want to object to now is the incorporation into the Court's charge of the statement that the defendant might exonerate itself in one of three ways; namely, by showing there was no defect in the appliances mentioned in evidence; or (2) that if there was such a defect it arose and was created by circumstances beyond defendant's control; or (3) that the defect, if any there was, had existed so short a period of time that defendant could not reasonably be expected to have been advised of it by the use of ordinary care. In view of the fact that, as I understood and as the Court has just dictated into the record, those statements would not be incorporated into the Charge, I did not, therefore, feel free to argue those things to the jury. Had I known that those hypotheses would be incorporated into the Charge I certainly would have argued it as strenuously as I could to the jury because they are highly important to the defendant's defense in this case.

"The Court: I think the argument would have been proper even if I had not mentioned it at all. I think the argument would have been proper under the general proposition of what was negligence. Go ahead.

"Mr. Sheppard: I felt that I could not argue it because that would be arguing a question of law to the jury which would not be included in the Court's charge, and I refrained from arguing those particular points."

Counsel for appellant contends this action of the Court violated Rule 51 of the Rules of Civil Procedure and was prejudicial error since it deprived him of the opportunity to argue the issues so presented.

First, it will be observed that the court gave only part of the instruction as asked. Whether the Rule requires the court to inform counsel if a part or the substance of a part of a request will be given, we need not determine because of considerations next to be stated. For our present purposes we will assume such duty exists.

Where counsel submit requests for instructions at the close of the evidence, Rule 51 requires that "the court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury

after the arguments are completed." The obvious purpose of this requirement is that counsel may argue the facts in the light of the law which, in so far as the requests go, they may presume the Court will later charge the jury.

What the Court did here was to indicate that this requested instruction would not be given. Thereafter and during the argument, the Court determined that a portion of this request should be included in the charge and that was done. The part included was, from the standpoint of appellant, an important portion of the request.

■■■■■■ This creates a troublesome situation which must be handled in a practical way. On one side is the important consideration that the Court should be free, up to the time of charging the jury, to make the charge as he thinks it should be. It is not unusual, that the arguments themselves bring out matters which affect the charge to be given. Also, it is established law that the court may refuse a requested instruction as a whole and then include a portion thereof in the charge. On the other hand, the Rule contemplates that counsel shall be informed, in so far as they have requested by instructions, what the court will charge so that they may pattern their arguments to fit the charge as given later.

■■■■■■ To prevent the exercise of the above functions by the court, at the penalty of voiding the trial, does not promote justice if there is any practical way to avoid such result and, at the same time, protect the rights of the litigants. To afford the above protections both to the court and to the parties, we think the practical solution is as follows. Where the court, in its charge, includes matter contained in a rejected request, the party or parties affected thereby should, in connection with exceptions to the charge, call the attention of the court to the specific matter and request the right to argue that particular matter to the jury. Since exceptions to the charge must (under other provisions of this Rule) be taken before retirement of the jury, an opportunity is thus afforded to correct the matter, if, in the light of the situation at that time (including the arguments already made), it should need correction. Such a solution will afford opportunity to obviate granting new trials or making errors which *may* be prejudicial. Here no request to reargue was made by counsel who treated the situation as static.

Counsel is not to be criticized for failing to make this request since this provision of the Rule is novel and he had no precedent to guide him. However, this is no reason to require a retrial which could have been saved by the aforestated natural procedure.

The judgment should be and is affirmed.

WOODROUGH, Circuit Judge (concurring).

I concur in the affirmance of the judgment and in the reasons given for sustaining the submission of the case to the jury, but I can not agree with the proposed construction and application of Rule 51.

The rule says counsel may file requests that the court instruct the jury "on the law as set forth in the requests", and requires the court to inform counsel of its "proposed action upon the requests prior to their arguments to the jury". I think the rule is drawn in contemplation of the traditional practice in jury cases where counsel present separate numbered "requests" for instructions on the law so formulated that giving or refusing a request informs counsel of the court's action thereon within the meaning of the rule. As I see it, the application of the rule must be strictly limited to that construction of its provisions. Often a request embodies more than one legal concept and several of them may be sound and applicable to the case while the request as a whole is improper. But the rule deals with "proposed action upon the requests" and has nothing to do with particular concepts or declarations that may be included within the requests. There was an object in the rule to give counsel information about the instructions before their arguments. But the trial court performs its duty and complies with the rule when it acts upon the requests by giving or refusing them before their arguments to the jury. It thereby informs counsel of its proposed action. Of course if a court should deceive counsel by refusing to give a requested instruction and afterwards giving the same instruction, a point could be made of it under Rule 51. But that situation is not presented. It is the duty of the court to instruct the jury fully and fairly upon the law and the fact that the court's instructions to the jury include some proper concepts that were also embodied in requests refused suggests no reason to upset a verdict. To construe the rule to mean that the trial court must not only tell counsel whether it will give

or refuse a request, but that the court must also declare itself about all the various concepts that may have been incorporated within the requests, seems to me unjustified. I think it would be disruptive of jury trials to create such an obligation and to consider assignments of error rested upon a trial court's failure to discharge it.

I would affirm because there was no error in the instructions given and no error in refusing to give the requested instructions.