## UNITED STATES v. KESINGER et al.
### No. 4229.

United States Court of Appeals
Tenth Circuit.

June 22, 1951.

**530**

Morton Hollander, Atty., Dept. of Justice (Holmes Baldridge, Asst. Atty. Gen., Lester Luther, U. S. Atty., Malcolm Miller, Asst. U. S. Atty., Topeka, Kan., Paul A. Sweeney, Atty., Dept. of Justice, and Marvin E. Frankel, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

David Prager, Nashville, Tenn., and Jacob A. Dickinson, Topeka, Kan. (Edward Rooney, Jacob A. Dickinson, Topeka, Kan., and David Prager, Nashville, Tenn., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

The appellees brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., to recover damages for the destruction of their barn and milk house, caused by the crash of an Army Air Force B–17, which occurred on appellees' farm located south of Topeka, Kansas, shortly after the airplane took off from the Topeka Air Base. The crash occurred on August 12, 1948, at 4:10 a. m. The B–17 was operated by Air Force personnel on an Air Force mission. The United States has appealed from an adverse judgment for $6,500.

In their complaint appellees alleged the ownership of the farm and buildings, the destruction of the buildings, and that the aircraft was at all times in the sole and exclusive custody and control of the employees of the United States, acting in the scope of their employment and for the benefit of the United States, and that the cause of the crash was unknown to appellees. In its answer the United States admitted the ownership of the farm and buildings and the destruction of the buildings. It further admitted that on August 12, 1948, at approximately 0410 hours central time one of its aircraft crashed into the buildings of the appellees and that such aircraft was being operated at the time of the crash by members of the Air Force pursuant to orders. It affirmatively alleged that the crash was the result of an unavoidable and unforeseeable accident and was not caused by any act of negligence on the part of the United States, or any officer, agent or employee thereof.

The aircraft was at all times here material in the sole and exclusive custody and control of the employees of the United States, acting in the scope of their employment and for the benefit of the United States.

Appellees offered testimony of the amount of damages, which are not in issue on this appeal.

The United States introduced evidence of the following facts: The airplane had been modified into a photographic type ship and was used in "routine mission work." On the morning the crash occurred the airplane took off and became airborne. At about 1500 feet beyond the end of the runway it touched the ground.

It left marks on the ground for approximately 172 feet. The propellers of the two inboard motors continued to revolve and cut into the ground and were torn from the airplane. The two outboard motors were positioned approximately 18 inches higher than the inboard motors. The revolving propellers of the outboard motors touched the grass on the field, but did not contact the earth and were not damaged. The plane became airborne again and was flown in a sharp arc for a distance of about two miles before the crash. All but two of the occupants were killed. The airplane was of a particularly safe type and the particular plane was rated as a perfect flying aircraft. It had been properly inspected and maintained. It was free from mechanical defects and was aerodynamically sound. The flying conditions were good. The weather was better than normal. The wind had a velocity of 12 miles per hour and there was practically no turbulence in the air.

Two theories of liability are advanced. One, absolute liability for trespass, regardless of fault, since the accident occurred in the pursuit of an extra-hazardous activity, and two negligence. The findings of the trial court, in part, read:

"4. That said aircraft at all times was in the sole and exclusive custody and control of the employees of the defendant acting in the scope of their employment and for the benefit of the defendant as members of the United States Air Force.

"5. That the direct, immediate and proximate cause of the crash of the aircraft into plaintiffs' buildings was the negligence of the operators of the defendant's aircraft in permitting said aircraft to come into contact with the ground at a point approximately 1,500 feet from the end of the runway and in failing to maintain proper control of the aircraft after take off.

"6. That the act of defendant's employees in flying the aircraft into plaintiffs' buildings constituted a trespass upon the land of plaintiffs."

In the past decade tremendous improvements have been effected in the design and construction of airplanes, and in the operation and maintenance thereof. Today, an airplane operated under normal weather conditions is a reasonably safe means of transportation. On the basis of passenger miles flown it is relatively as safe as other methods of public transportation. The rates charged by insurance carriers for insurance of passengers are the same whether the passenger travels by train, bus or airplane. An airline which has operated in the states of Colorado, Kansas, Oklahoma, New Mexico and Texas during the past 15 years recently received a special award from the National Safety Council. During the period of its operation the airline has flown 437,262,000 passenger miles without a passenger fatality and without a serious accident. An international airline was also given an award by the National Safety Council for having completed 1,637,300,000 passenger miles without a passenger or crew fatality. An airplane of a proven safe type of design taking off for an ordinary routine flight under normal weather conditions does not crash in the ordinary course of things, unless there has been a failure to properly inspect, service and maintain it, or unless it is not operated with due care.

The rule of res ipsa loquitur has been recognized by repeated decision of the Supreme Court of Kansas.[1]

The Kansas decisions hold that it is a rule of evidence and not a substantive rule of law.[2]

The rule of res ipsa loquitur is applicable when the thing which caused the injury was, at the time of the injury, in the custody and under the exclusive control of

1. Mayes v. Kansas City Power & Light Co., 121 Kan. 648, 249 P. 599, and cases cited at page 602; Travelers Ins. Co. v. Hulme, 168 Kan. 483, 213 P.2d 645, 16 A.L.R.2d 793; Truhlicka v. Beech Aircraft Corporation, 162 Kan. 535, 178 P.2d 252.

2. Truhlicka v. Beech Aircraft Corporation, 162 Kan. 535, 178 P.2d 252, 259; Starks Food Markets v. El Dorado Refining Co., 156 Kan. 577, 134 P.2d 1102, 1104; Travelers Ins. Co. v. Hulme, 168 Kan. 483, 213 P.2d 645, 647, 16 A.L.R. 2d 793.

532

the defendant, and the occurrence was one which in the ordinary course of things does not happen if the one having such exclusive control uses proper care.[3] It will take the case to the jury unless the entire evidence is such that the presumption cannot stand against it. It is not enough that the evidence of the defendant would, if true, be sufficient to rebut the presumption, because it is for the trier of facts to pass upon the credibility of the witnesses and the truth of their testimony.[4]

■ The rule is based in part upon the theory that the defendant, having custody and exclusive control of the instrumentality which caused the injury, has the best opportunity of ascertaining the cause of the accident, and that the plaintiff has no such knowledge and is compelled to allege negligence in general terms and to rely upon the proof of the happening of the accident in order to establish negligence.[5]

■ Here, the aircraft which caused the injury was in the exclusive custody and control of employees of the United States, acting within the scope of their employment. The airplane was of a particularly safe type and it was regarded as a perfect

flying aircraft. At the time of the accident weather conditions were better than normal. The wind had a velocity of 12 miles per hour and there was practically no turbulence in the air. The employees of the United States had the best opportunity of ascertaining the cause of the accident and the plaintiff did not know and could not readily ascertain and establish by proof such cause.

The modern trend of authority is to hold the rule of res ipsa loquitur applicable to airplane accidents,[6] and we hold that it was applicable under the facts and circumstances presented in the instant case.

The evidence adduced by the United States established that the airplane had been properly inspected, serviced and maintained; that it was free from mechanical defects and was aerodynamically sound; that it was a particularly safe type of aircraft and was regarded as a perfect flying airplane; that the weather conditions were better than normal, and that the air was free from turbulence, and that 68 per cent of airplane accidents are the result of pilot failure. Charles T. Price, a major in the Army Air Corps, a senior pilot with five years of service and 1500 flying hours,

3. Atchison T. & S. F. Ry. Co. v. Simmons, 10 Cir., 153 F.2d 206, 208; San Juan Light & Transit Co. v. Requena, 224 U. S. 89, 98, 99, 32 S.Ct. 399, 56 L.Ed. 680; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101, 106; Terminal R. Ass'n of St. Louis v. Staengel, 8 Cir., 122 F.2d 271, 273, 136 A.L.R. 789; Travelers Ins. Co. v. Hulme, 168 Kan. 483, 213 P.2d 645, 648, 649, 16 A.L.R.2d 793; Mayes v. Kansas City Power & Light Co., 121 Kan. 648, 249 P. 599, 601, 602; Truhlicka v. Beech Aircraft Corporation, 162 Kan. 535, 178 P.2d 252, 259–260.

4. Atchison T. & S. F. Ry. Co. v. Simmons, 10 Cir., 153 F.2d 206, 208; Terminal R. Ass'n of St. Louis v. Staengel, 8 Cir., 122 F.2d 271, 274, 136 A.L.R. 789 and cases there cited; May Department Stores Co. v. Bell, 8 Cir., 61 F.2d 830, 840.

5. Starks Food Markets v. El Dorado Refining Co., 156 Kan. 577, 134 P.2d 1102, 1105; Truhlicka v. Beech Aircraft Corporation, 162 Kan. 535, 178 P.2d 252, 259; Winslow v. Ohio Bus Line Co., 148 Ohio St. 101, 73 N.E.2d 504, 508; Joly

v. Jones, 115 Vt. 174, 55 A.2d 181, 184; Morner v. Union Pac. R. Co., 31 Wash. 2d 282, 196 P.2d 744, 749.

6. Sollak v. State of New York, 1929 U.S. Av.R. 42; Genero v. Ewing, 176 Wash. 78, 28 P.2d 116, 118; Smith v. Pennsylvania Central Airlines Corp., D.C. D.C., 76 F.Supp. 940, 945, 6 A.L.R.2d 521; McInnerny v. McDougall, 47 Manitoba 119, 126; Galer v. Wings, Ltd., 47 Manitoba 281, 291; Malone v. Trans-Canada Airlines, 1942, 3 D.L.R. 369, 1942 U.S.Av.R. 144; Fosbroke-Hobbs v. Airwork Ltd., 1938 U.S.Av.R. 194, 197; Seaman v. Curtiss Flying Service, 1931 U.S.Av.R. 229; Id., 231 App.Div. 867, 247 N.Y.S. 251, 253; Bratt v. Western Air Lines, 10 Cir., 169 F.2d 214; Kamienski v. Bluebird Air Service, 321 Ill. App. 340, 53 N.E.2d 131, 132; Smith v. O'Donnell, Cal.App., 5 P.2d 690, 693; Id., 215 Cal. 714, 12 P.2d 933, 936; Stoll v. Curtiss Flying Service, Inc., 1930 U.S. Av.R. 148, 161; Rainger v. American Airlines, Inc., 1943 U.S.Av.R. 122, 133, 134; See also, McCusker v. Curtiss Wright Flying Service, Inc., 269 Ill.App. 502; Note, 6 A.L.R.2d 528.

and a member of the official board of investigation which investigated the crash of the airplane, testified that the fact that the airplane touched the ground indicated that the airplane was flown too close to the ground and that the investigation disclosed nothing wrong except that the aircraft was flown lower than it should have been.

We need not consider the ruling of the trial court denying the motion to dismiss the action, interposed at the close of appellees' evidence, which motion seems to have been based upon the asserted failure of the complaint to state a cause of action. The United States did not stand upon its motion, but elected to introduce evidence and the appellees were entitled to the benefit of the evidence favorable to them introduced by the United States.[7]

We think the evidence and the facts admitted by the answer not only permitted no reasonable conclusion to be drawn other than that the pilot was at fault,[8] but affirmatively established want of due care on the part of the pilot and supported the finding of the trial court that the pilot negligently permitted the aircraft to come into contact with the ground at a point approximately 1500 feet from the end of the runway and failed to maintain proper control of the aircraft after the take-off.

The undisputed evidence is that the damage which the airplane suffered when it first came in contact with the ground after the take-off caused the final crash. Since the pilot was guilty of negligence which proximately caused the damage, the United States was clearly liable under the Federal Tort Claims Act. We deem it unnecessary to pass upon the other theory of liability advanced.

Affirmed.

7. Stafford v. Roadway Transit Co., D.C. Pa., 70 F.Supp. 555, 575; Affirmed Id., 3 Cir., 165 F.2d 920; Kluska v. Yeomans, 54 Wash. 465, 103 P. 819, 821; Smith v. Thoms, 55 Ohio App. 174, 9 N.E. 2d 172, 174; Hotchkiss v. Walter, 132 A. 242, 243, 4 N.J.Misc. 211; Baltimore Refrigerating & Heating Co. v. Kreiner, 109 Md. 361, 71 A. 1066, 1072; Under Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the pleadings were in effect automatically amended to conform to the evidence.

8. See, Mayes v. Kansas City Power & Light Co., 121 Kan. 648, 249 P. 599, 602; Truhlicka v. Beech Aircraft Corporation, 162 Kan. 535, 178 P.2d 252, 260; Starks Food Markets, Inc. v. El Dorado Refining Co., 156 Kan. 577, 134 P.2d 1102, 1105.