Turner, J.
 

 The special instruction No. 1 which the-Court of Appeals found to be error reads as follows:
 

 “Now the court tells you that it is established by the-evidence that the collision was caused by negligence of' The Ohio Bus Line Company bus.
 

 “Therefore, if you find that the collision proximately caused plaintiff to be injured by coming in contact with or being forced upon or against any object in the-seat of the New Miami bus, you should return a verdict in favor of the plaintiff against The Ohio Bus-Line Company for the full amount of her damage-proximately resulting from such injury.
 

 “And in such case you should return such verdict in favor of the plaintiff for the full amount of such damages, against The Ohio Bus Line Company, whether or not such object was permitted to be in the seat by negligence of the Schmidt bus line, and even if you should find that, but for the presence of such object,, plaintiff would have sustained no injury.”
 

 The particular part of the foregoing charge found.to be error is pointed out in the court’s opinion as-follows:
 

 “Now the court tells you that it is established by the evidence that the collision was caused by negligence of The Ohio Bus Line Company bus.”
 

 The part of the court’s general charge found erroneous is referred to in the opinion of the Court of Apr peals as: “Under the evidence in this case as a matter of law The Ohio Bus Line Company was negligent in the operation of its bus by its driver at the time and place claimed and that such negligence caused the collision which took place between its bus and the New Miami bus on which the plaintiff was at the time there
 
 *105
 
 of a passenger.”
 

 The trial court submitted to the jury only the issues of proximate cause and the extent of damage to plaintiff.
 

 At the close of the Court of Appeals’ opinion it was said:
 

 “We are of the opinion that the court erred in charging as a matter of law that the collision between these two buses was caused by the defendant’s negli.gence. We find no other prejudicial error in the record.”
 

 In arriving at such conclusion the Court of Appeals was of the opinion that the evidence presented a case for the application of the doctrine of
 
 res ipsa loquitur,
 
 and that under the rulings of this court such a case must be submitted to a jury to determine what inferences of negligence should be drawn.
 

 In the first place we are of the opinion that the pleadings and evidence in this case do not present a case for the-application of the doctrine of
 
 res ipsa loquitur.
 

 Res ipsa loquitur
 
 is defined in Bouvier’s Law Dictionary, Rawle’s Third Revision, Vol. 3, page 2908, as follows:
 

 “ (Lat. The transaction speaks for itself.) A phrase often used in actions for injury by negligence where no proof of negligence is required beyond the acpident itself, which is such as necessarily to involve negligence. ’ ’
 

 In the case of
 
 Weller, Exrx.,
 
 v.
 
 Worstall,
 
 129 Ohio St., 596, 196 N. E., 637, Judge Zimmerman said of
 
 res ipsa loquitur,
 
 at page 600: “It is founded on an absence of specific proof of acts or omissions constituting negligence. ’ ’
 

 As stated by Dr. Albert Levitt in his introduction to Shain’s
 
 Res Ipsa Loquitur-.
 

 1‘ The function of the doctrine of
 
 res ipsa loquitur
 
 is
 
 *106
 
 to supply a fact, which must have existed in the causal chain stretching from the act or omission by the defendant to the injury suffered by the plaintiff, but which the plaintiff, because of the circumstances surrounding the causal chain, cannot know and cannot prove to have actually existed. The missing fact is that the defendant was negligent.”
 

 In 45 Corpus Juris, 1206, Section 774, it is said:
 

 “The doctrine of
 
 res ipsa loquitur,
 
 although it provides a substitute for direct proof of negligence where plaintiff is'unable to point out the specific act of negligence which caused his injury, is a rule of necessity to be invoked only when, under the circumstances involved, direct evidence is absent and not readily available.'”
 

 In 38 American Jurisprudence, 995, Section 299, it is said:
 

 “The
 
 res ipsa loquitur
 
 doctrine is based in part upon the theory that the defendant in charge of the instrumentality which causes the injury either knows the cause of the accident or has the best" opportunity of ascertaining it, and that the plaintiff has no such knowledge, and therefore is compelled to allege negligence in general-terms and to rely upon the proof of the happening of the accident in order to establish negligence. ’ ’
 

 In the petition upon which this case was tried, plaintiff alleged that the collision resulted from the appellee ’s negligence in these respects:
 

 1. It failed to keep said bus under control;
 

 2. It failed to observe the movements of the bus of Henry A. Schmidt and Hannah Schmidt preceding it;
 

 3. It failed and neglected to apply the brakes to its bus and bring it to a stop behind the bus of said Henry A. Schmidt and Hannah.Schmidt;
 

 4. it operated its bus so that it could not bring it to a stop within the assured clear distance ahead.
 

 
 *107
 
 In characterizing these allegations of negligence, the Court of Appeals in its opinion said:
 

 “These allegations of negligence do not charge this appellant with the violation of any statute or of negligence as a matter of law. They charge a failure to exercise ordinary care under the circumstances.” With this statement we agree.
 

 There is nothing in the pleadings from which it ■could be inferred that the plaintiff was not in full possession of all the facts necessary to show the negligence of appellee.
 

 The doctrine of
 
 res ipsa loquitur
 
 furnishes a bridge by which a
 
 plaintiff,
 
 without knowledge of the cause, reaches over to defendant who knows or should know the cause, for any explanation of the care «exórciséd by the defendant in respect of the matter of which the plaintiff complains.
 

 The case of
 
 Fink
 
 v.
 
 New York Central Rd. Co.,
 
 144 Ohio St., 1, 56 N. E. (2d), 456, is an illustration of the application of the rule of
 
 res ipsa loquitur
 
 as now interpreted in Ohio. In that case no specific act of negligence was complained of in the petition, but the allegation of the fact of the accident alone with cause unknown to the plaintiff called upon the defendant which had exclusive management and control of the instrumentality causing the damage to explain. In the
 
 Fink case,
 
 as well as in the case of
 
 Glowacki, a Minor,
 
 v.
 
 North Western Ohio Ry. & Power Co.,
 
 116 Ohio St., 451, 157 N. E., 21, 53 A. L. R., 1486, and the case of
 
 Scovanner
 
 v.
 
 Toelke,
 
 119 Ohio St., 256, 163 N. E., 493, the requirement of submission to the jury of defendant’s explanation offered to meet the inference raised under the rule of
 
 res ipsa loquitur
 
 is limited to instances where “the defendant has offered evidence tending to meet and explain the circumstances.”
 

 In the instant case no reasonable inference can be drawn but that appellee’s servant was negligent.
 

 
 *108
 
 There 'has been some confusion brought into this-ease through the claim of an admission by defendant of its negligence. This is referred to in the opinion of the Court of Appeals in the following language: “The appellee’s claim is based upon testimony of Nettles-who was not the defendant in the case, nor authorized to bind it by any statement he might make on the witness stand.” There is nothing in the record to sustain a claim that the driver of the bus was authorized to confess judgment. However, Nettles, the driver of the bus, was offered as a witness by the defendant and it is his
 
 testimony
 
 that binds the defendant. No reasonable inference may be drawn from all the evidence offered by defendant but that of its negligence. From a reading of the record it is apparent that the real contest in this case was not such defendant’s negligence but whether or not that negligence had caused any injury to the plaintiff, including the extent of such injuries. There can' be no question that appellee’s bus bumped the bus of the third party. There can be no question that some of the passengers in the third party’s bus were jarréd.
 

 Defendant offered the driver of its bus as a witness in its defense. This witness testified in chief as follows:
 

 “Q. Now just tell us what occurred. A. Well, I was moving down and the Naw Miami bus was right ahead of me and he stopped and I stopped but I didn’t ■stop hardly quick enough, I just ldnda bumped the back end of-his bus * * *.
 

 “Q. You may state whether or not the New Miami bus was moving or whether it had entirely stopped, at that time? A. I believe it was entirely stopped — just as I bumped it it was entirely stopped. * * *
 

 “Q. Did you hear the driver of that bus say anything? A. I heard him ask the passengers was there any one hurt.
 

 
 *109
 
 "‘Q. And did any one answer? A. There was one lady answered and that was—
 

 "Q. The lady with the child? A. Yes, the lady with the child. * * *
 

 “Q. You may state if you know Mr. Benham. A. Yes, sir, he is the superintendent.
 

 "Q. In other words, he was your boss? A. Yes sir.
 

 ■ "Q. Was he there? A. Yes sir.
 

 "Q. Did you hear him say anything *at that time? A. Yes sir, he asked if there was any one hurt.
 

 "Q. Did any one answer other than this lady with the little baby? A. No, no one except the lady with the little baby.”
 

 On cross-examination this same witness testified:
 

 "Q. What did you hit it for then? A. It is just one of them things that just happen. * * *
 

 "Q. You want, to say you could have stopped and avoided this collision but you didn’t, is that right ? A. Yes — when my bus stopped, that’s where I was intending to go in the first place, that’s.where I intended to stop — there where my bus was.
 

 "Q. You mean you went right up where you had in mind to stop regardless of the fact that the New Miami bus was there? A. That’s right. * * *
 

 "Q. You were seated there in the driver’s seat, weren’t you? A. Yes.
 

 "Q. And you permitted it to do that, didn’t you? A. Yes.
 

 "Q. And you say you could have prevented it easily? A. I didn’t say how easy.
 

 "Q. But you could have prevented it? A. Yes.
 

 "Q. Matter of fact, did you fail to observe that the New Miami bus was on that spot? A. I failed to observe that the New Miami bus had stopped. * * *
 

 "Q. Now didn’t Benham even ask you about how it happened? A. Yes sir.
 

 
 *110
 
 “Q. What did you tell him — that you just let it run down there and run into that bus? A. Yes sir — there was no explanation for it- — -it was just one of them things — if anybody drives very much — you probably could have it happen to you. * * * [The latter part of this answer was stricken.]
 

 “Q. Did you see the people that were standing in the other bus stagger or be thrown -towards the rear of the bus? A. I seen them stagger but not thrown.
 

 “Q. But they did move backwards towards the rear when you hit the bus, didn’t they? A. Yes.”
 

 The defendant also offered as a witness in its behalf the driver of the third party’s bus which was bumped. This witness testified in chief:
 

 “Q. Then tell us what occurred? A. Well, this Ohio bus man just dropped down and we all dropped down to move up to let the other men in — and his bus bumped the bus that I was driving.
 

 “Q. Now how — with what force did his bus bump your bus?' A. Well, it wasn’t any great force.
 

 “Q. Was your bus damaged in any way? A. No sir. “Q. Was the Ohio Bus Line bus damaged? A. No sir, not that I know of — at least there wasn’t any damage showed on the bus.
 

 “Q. Now just tell us what you did after that. A. Well, when this happened I got out of the bus and stepped on the outside and asked them was anybody hurt and everybody said no except one colored man and he said he thought his neck was hurt, and some lady had a little baby — I think it was probably leaning against the seat — and I thought maybe the baby was hurt and I asked the lady — I asked all of the people on the bus if anybody was hurt to please get out of the bus, and I went to Mr. Benham’s office and I told him that his bus had dropped down and bumped our bus— his bus driver had — and asked him if he would come down so that if anyone was going to make a claim
 
 *111
 
 they could make it to him because he was the superintendent — and I made four specific trips in the bus and asked if anybody was hurt if they would go to the hospital with Mr. Benham for a check-up.
 

 “Q. And did any of them go? A. This lady — the lady with the baby got out and this colored man.
 

 “Q. And did you learn that' they weren’t hurt?
 

 A. Yes.”
 

 This same witness testified on cross-examination:
 

 “Q. When you came to a stop after the collision you say yoúr car was out in the gutter? A. The front wheels were sitting in the gutter, yes sir. ’ ’
 

 Near the end of this witness’ testimony, the court asked the following questions to which answers as indicated were given:
 

 “Q. Did we understand you to say that after the Ohio Bus Line Co. bus struck your bus that your bus did not move at all? A. Oh, I say it probably moved a foot or two. * * *
 

 ‘ ‘ Q. And you were not moving at the time you were struck. A. No sir.
 

 “Q. But you were waiting there until it was time for you to leave — that what you said? A. Yes.
 

 “Q. And after the bus was struck you were in the gutter? A. Yes sir.”
 

 Appellee introduced one of the women passengers who testified in chief as follows:
 

 “Q. Now as you were seated on that seat where you said, do you remember a bump of another bus — from the back? A. Yes sir.
 

 “Q. Now tell us whether the bus you were in was moving or standing still at that time? A. The bus was standing still when the other one pulled up against it — it was just a kind of a jar. * * *
 

 ‘ ‘ Q. And what if anything did he say to you at that time? A. Well, they was a couple of children in the bus and niy little girl, she was scared and crying, and
 
 *112
 
 the small baby cried, and the best I remember Mr. Hypes asked if anyone was hurt and if they was they would be taken to the hospital and taken care of and there was a man there taking names of the ones that was hurt and needed to be taken to the hospital. ’ ’
 

 On cross-examination this witness testified:
 

 “Q. Now didn’t you say when Mr. Wonnell was examining you, that some of those people standing in the aisle fell against some of the people seated in the seats ? A. I said they kinda swayed against each other like you would when the bus goes over a rise in the road.
 

 “Q. You answered his question — you did say that the people that were standing fell against some of the people that were sitting down — now did you or didn’t you? A. Yes, I said the people swayed but I didn’t say they fell over on top of one another and nobody fell completely down, not that I seen.”
 

 Another woman passenger' was offered as a defense witness and testified in part as.'follows:
 

 “Q. Now at the time of — what happened then — just tell us. A. The bus ran into us and kinda shook us up a little — and no one was hurt at first — -as well as I know — at first we thought a baby was hurt, it cried, so they took it to the hospital and said it was all right. *
 
 *
 
 * [Latter part of the answer was stricken.]
 

 “Q. Did they — did anybody fall down or fall over? A. No one fell that I seen at all. ? * *
 

 “Q. Now after that, what if anything did you hear Mr. .Hypes say, the driver of the bus? A. Well, he was — he said all those that were hurt and .wanted to go to the hospital should go — and he sent that Mrs. Carberry’s baby to the hospital.”
 

 Bearing in mind that a motion to direct a verdict in favor of the appellee had been made at the close of plaintiff’s evidence and at the close of all the evidence and overruled, the Court of Appeals apparently found
 
 *113
 
 no error in such ruling. And neither do we. Appellee offered four witnesses whose testimony'conflicted with plaintiff’s evidence as to the
 
 injury
 
 received by plaintiff. However, there is no room for any doubt that the testimony of these witnesses not only did not exculpate appellee from negligence by its servant but confirmed the want of due care on the part of such servant. With this situation before him the trial judge properly found as a matter of law that appellee was guilty of negligence as charged in the petition and left to the jury only the questions of proximate cause and the damage, if any.
 
 ,
 

 There is a strong temptation to review the cases which this court has decided involving the rule of
 
 res ipsa loquitur.
 
 We believe, however, that we have shown sufficiently that the present case is not one involving the doctrine. However, if it is desired to pursue this matter further, the following Ohio cases,
 
 inter alia,-
 
 may be examined:
 
 Cincinnati Traction Co.
 
 v.
 
 Holzenkamp,
 
 74 Ohio St., 379, 78 N. E., 529, 113 Am. St. Rep., 980, 6 L. R. A. (N. S.), 800;
 
 Loomis
 
 v.
 
 Toledo Rys. & Light Co.,
 
 107 Ohio St., 161, 140 N. E., 639;
 
 Edelstein
 
 v.
 
 Cook,
 
 108 Ohio St., 346, 140 N. E., 765, 31 A. L. R., 1333;
 
 Glowacki, a Minor,
 
 v.
 
 North Western Ohio Ry. & Power Co., supra; Scovanner v. Toelke, supra; Weller, Exrx.,
 
 v.
 
 Worstall, supra; Fink
 
 v.
 
 New York Central Rd. Co., supra.
 

 Even if this were a, case to which the rule of
 
 res ipsa loquitur
 
 were applicable, the explanation offered by appellee clearly does not show due care on its part and the only logical and reasonable conclusion to be drawn from all the evidence is that defendant was guilty of negligence. We are not unmindful of the holding of this court in the third paragraph of the syllabus in the case of
 
 Vignola
 
 v.
 
 New York Central Rd. Co.,
 
 102 Ohio St., 194, 131 N. E., 357, wherein it was said in part:
 

 
 *114
 

 “*
 
 * * Where there is no conflict in the testimony, but nevertheless the unconflicting testimony discloses a variety of circumstances from which different minds may reasonably arrive at different conclusions as.to the ultimate facts shown by the evidence, it is the duty of the jury to determine such ultimate fact. When the decisive ultimate fact is undisputed, there is presented simply a question of law.” ' .
 

 We are of the opinion that insofar as negligence is concerned, the “decisive ultimate fact is undisputed.”
 

 Assuming that the record in this case permitted the application of the doctrine as presently followed in Ohio: We are of the opinion that, none of the cases support the claim that in a
 
 res ipsaloquitur
 
 case where the evidence offered by the defendant did not tend to show his due care and did not tend to explain the circumstances surrounding the occurrence complained of, the trial court may not instruct the jury that defendant has been guilty of negligence as a matter of [aw.
 

 We do not agree with the court below that, even in a
 
 res ipsa loquitur
 
 case upon such a record as here made, it was necessary to submit the question of negligence to the jury.
 

 We are of the opinion that the decision in this case should be guided by the rule laid down in the case of
 
 Cleveland, C. & C. Ry. Co.
 
 v.
 
 Crawford, Admr.,
 
 24 Ohio St., 631, 15 Am. Rep., 633, where it was held in paragraph five of the syllabus, “But, if all the material facts touching the alleged negligence be undisputed, or be found by the jury, and admit of no rational inference but that of negligence, in such case the question of negligence becomes a matter of law merely, and the court should so charge the jury,” and in paragraph three of the syllabus of the case of
 
 Hamden Lodge
 
 v.
 
 Ohio Fuel Gas Co.,
 
 127 Ohio St., 469, 189 N. E., 246, which reads in part, “* * * But if upon any essential issue, after giving the evidence such favor
 
 *115
 
 able construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him.”
 

 In the case of
 
 Schickling, an Infant,
 
 v.
 
 Post Publishing Co.,
 
 115 Ohio St., 589, 155 N. E., 143, the syllabus reads in part:
 

 ‘ ‘When the facts attending any issue in an action are admitted or the evidence in respect thereto is not in conflict, it is the duty of the trial court to charge the jury the result that must follow an application of the law to the facts so established; # *
 

 The rule is well stated in 1 Shearman & Redfield on Negligence (Rev. Ed.), 116, Section 45 (annotated with many cases):
 

 “When the facts are neither contradicted nor permissive of conflicting inferences, when they are clearly settled and the course dictated by ordinary care can be so clearly discerned as to permit but a single inference, there is nothing proper for submission to a jury and the trial court should direct a verdict or a non-suit. ’ ’
 

 In the course of his opinion in
 
 Hamden Lodge
 
 v.
 
 Ohio Fuel Gas Co., supra,
 
 Judge Bevis said at page 482:
 

 “But to say that the court must send the case to the jury whenever there is any evidence, no matter how slight, which tends to support a party’s claim, is, in extreme cases, to permit the jury to play with shadowy and elusive inferences which the logical mind rejects. Before the judge is required to send the case to the jury, there should be in evidence something substantial from which a reasonable mind can draw a logical deduction. If reasonable minds may draw different inferences, or reach different conclusions, a jury question is presented. But, if reasonable minds can reach only one conclusion, the jury should not be allowed to speculate upon the matter. To do so is to allow them
 
 *116
 
 the opportunity of returning a wholly unreasonable verdict. * ® *
 

 “Our present holding is but the corollary of a doctrine long accepted. We permit the judge to say that there is no evidence to support a verdict. May he not equally be trusted to say whether there is any substantial evidence from which a rational conclusion may be drawn? * * *
 

 “Before a verdict may be directed against a party, the evidence must be given the most favorable interpretation in his favor. If, after such interpretation, the court finds that upon any material issue only an adverse conclusion can reasonably be drawn, it should direct a verdict against him.”
 

 In its assignment of errors in the Court of Appeals, the appellant there (appellee here) assigned the following ground:
 

 “The court erred in overruling the motion of this defendant-appellant made at the close of plaintiff’s evidence and also made at the close of all the evidence to direct the jury to return a verdict in favor of this defendant-appellant. ’ ’
 

 The Court of Appeals apparently overruled this assignment of error. Thus at the close of plaintiff’s case, defendant’s negligence had been shown. At the close of all the evidence such defendant had failed to offer evidence tending to meet and explain the circumstances showing defendant’s due care in case the doctrine of
 
 res ipsa loquitur
 
 had been applicable.
 

 Under favor of Section 12223-21a, General Code, appellee has assigned seven grounds of error requesting that the same be passed upon before the judgment below is reversed in whole or in part.' Section 12223-21a/ General Code, provides as follows:
 

 “Assignments of error may be filed on behalf of an appellee which shall be passed upon by á reviewing-court before a judgment or order is reversed in whole
 
 *117
 
 or in part. The time within which assignments of error on behalf of an appellee may be filed shall be fixed by rule of court.”
 

 The foregoing section was enacted without the blessing of the judicial council. 31 O. 0., 361; Section 1697-1
 
 el seq.,
 
 General Code.
 

 The jurisdiction and duties of this court are fixed primarily by Section 2 of Article IV of the Constitution of Ohio. Therefore, such statute is of doubtful constitutionality. However, it is not necessary for us to pass upon its constitutionality for the reason that it is the practice of this court, before reversing or modifying the judgment of the Court of Appeals, to examine appellee’s assignments of error which were pressed in the Court'of Appeals and passed upon by that court as shown by the
 
 record
 
 certified to this court.
 

 In the case of
 
 The Chicago Ornamental Iron Co.
 
 v.
 
 Rook, Admr.,
 
 93 Ohio St., 152, 112 N. E., 589, it was held:
 

 “A cause properly in this court is here for the determination of all questions
 
 presented by the record.”
 
 (Italics ours.) (Other than the weight of the evidence. p. 156) See, also,
 
 Pettibone
 
 v.
 
 McKinnon,
 
 125 Ohio St., 605, 183 N. E., 786;
 
 Couk et al.
 
 v.
 
 The Ocean Accident & Guarantee Corp., Ltd.,
 
 138 Ohio St., 110, 33 N. E. (2d), 9;
 
 Keesecker, a Minor, v. The G. M. McKelvey Co.,
 
 141 Ohio St., 162, 47 N. E. (2d), 211.
 

 As stated by Judge Bell in
 
 Hetrick, Admx.,
 
 v.
 
 Marion-Reserve Power Co.,
 
 141 Ohio St., 347, 354, 48 N. E. (2d), 103, in referring to Section 2 of Article IV of the Constitution: “This provision grants jurisdiction to this court to review
 
 the judgments
 
 of the Courts of Appeals, and while serious consideration is given to the opinions of those courts, this court is bound by the judgment, not the opinion. ’ ’
 

 All of the assignments of error made in appellee’s brief were presented to the Court of Appeals. While
 
 *118
 
 the Court of Appeals’
 
 opinion
 
 contains the sentence, “We find no other prejudicial error in the record,” yet when we examine that court’s
 
 journal entry
 
 there is no similar statement therein and no reference to any error except those in respect of appellant’s request for special charge No. 1 and the portion of the general charge to the jury “as a matter of law that the collision between the two buses, as set out in the pleadings, was caused by the defendant’s negligence.”
 

 A court speaks only through its journal. No mention was made either in the court’s opinion or journal entry as to the weight of the evidence in respect of the issues submitted to the jury,
 
 i. e.,
 
 proximate cause and •extent of damage. This same observation applies to ethers of appellee’s assignments'of error.
 

 As the
 
 record
 
 in this case does not disclose that all errors assigned by the appellant in the Court of Appeals were passed upon by that court, we are. of the opinion that the cause should be remanded to the Court ef Appeals to pass upon any undecided assignment of ■error, if any there be.
 

 Therefore, the judgment of the Court of Appeals' should be, and hereby is, reversed and the cause remanded to the Court of Appeals for further proceedings not inconsistent with this opinion.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.