Stewart, J.
A query arises as to whether this court may consider the cross-assignment of errors filed by appellee to the effect that the Court of Appeals was in error in affirming the judgment of the Probate Court so far as it found that appellee committed a fraud upon the court, vacated the final account and ordered the return by appellee of the statutory fees he had received from the estate of William A. Wright, or whether we are confined to the question whether appellee was in direct contempt of the Probate Court by his conduct in the administration of the estate of William A. Wright.
One of the things essential to invoke the jurisdiction of this court in an appeal from the Court of Appeals is a filing in that court of a notice of appeal within 20 days of the rendition of its judgment.
For the benefit of a party to a judgment of the Court of Appeals who does not wish to appeal from such judgment unless the opposing party does so, this court adopted Section 1 (C) of Eule II, which reads as follows:
“A notice of cross-appeal may be filed in this court by an adverse party within the time provided by law for the filing of a notice of appeal. Provided, however, that such party may deposit his notice of cross-appeal with the clerk of the Court of Appeals or with an administrative board and with the clerk of this court, with instructions to said clerks or board to file such notice of cross-appeal upon the filing of notice of appeal by the appellant.”
In 1945 the General Assembly enacted Section 12223-21a, General Code, which reads:
“Assignments of error may be filed on behalf of an appellee which shall be passed upon by a reviewing court before a judgment or order is reversed in whole or in part. The time within which assignments of error on behalf of an appellee may be filed shall be fixed by rule of court. ’ ’
This court has never passed upon the meaning or effect of this section, and the only comment upon it found in the reports *19 of cases decided by this court is in tbe opinion in Winslow v. Ohio Bus Line Co., 148 Ohio St., 101, 73 N. E. (2d), 504, where Judge Turner said:
‘ ‘ The jurisdiction and duties of this court are fixed primarily by Section 2, Article IY of the Constitution of Ohio. Therefore, such statute is of doubtful constitutionality. However, it is not necessary for us to pass upon its constitutionality for the reason that it is the practice of this court, before reversing or modifying the judgment of the Court of Appeals, to examine appellee’s assignments of error which were pressed in the Court of Appeals and passed upon by that court as shown by the record certified to this court.”
In view of the conclusion at which we have arrived, it is not necessary for us at this time to pass upon the question as to whether an appellee in this court saves his right of appeal by merely filing a cross-assignment of errors.
The Probate Court was the trier of the facts and it found the pertinent facts to be substantially as follows:
In his application for letters of administration, appellee named certain persons as next of kin, such persons being second cousins of decedent, William A. Wright. Within two weeks from appellee’s appointment, there appeared at his office a man named William Wright who claimed to be first cousin of decedent William A. Wright.
On June 3, 1949, William Wright was found by the Probate Court to be the sole heir of William A. Wright.
On March 21, 1949, appellee filed a petition to determine heirship and, on the following day, a petition to sell real estate to pay debts. In these petitions the named defendants were the four second cousins of decedent and one Helen Paflovski who claimed to be the common-law wife of decedent. William Wright’s name did not appear, although in both petitions there was added the phrase, “unknown heirs, devisees, legatees, administrators, executors and assigns of William A. Wright, deceased.”
In the Probate Court’s opinion no satisfactory answer was given for appellee’s failure to make William Wright a party-defendant and to accord him the same treatment as was accorded the second cousins and the alleged common-law wife, al *20 though William Wright had claimed to appellee to be a first cousin and should have been named party-defendant.
On March 23, and March 24, 1949, appellee filed affidavits to the effect that service could not be made on the unknown heirs, legatees, administrators, executors, devisees and assigns of decedent.
On May 24, 1949, William Wright first appeared and filed a waiver of summons, entry of appearance and consent in the heirship proceeding, and on June 3, on the hearing of the petition, an order was entered determining that William Wright was the sole heir of decedent.
In the proceeding to sell real estate, a waiver of summons and entry of appearance by William Wright was filed on May 24, 1949, and leave was given him to become a new party-defendant.
On June 3, the property was sold for $4,000, which constituted the greater part of the estate of decedent.
The Probate Court found from appellee’s own testimony that of all the time spent in the administration of this estate, 10 hours would cover services which appellee claims to have personally rendered to William Wright as his attorney. Such services were limited to. resistance of the claim of Helen Paflovski, alleged common-law wife of decedent, although appellee had denied this claim in May 1949. We may add, however, that appellee testified as to considerable services consisting of correspondence and the securing of documents from England, establishing William Wright’s relationship to decedent.
In coming to the conclusions at which it arrived, the Probate Court considered a written agreement entered into between William Wright and appellee, personally, on September 20, 1949, and it is largely from that agreement that it drew the inferences which determined the judgment it entered. That agreement is as follows:
“Agreement made this 20th day of September, 1949, by and between William Wright (hereinafter called ‘the client’) and Henry H. Pleasant, attorney at law (hereinafter called ‘the attorney’),
“Witnesseth:
“The client hereby had retained and employed Henry H. *21 Pleasant to act for and on his behalf in various legal matters pertaining to the estate of William A. Wright.
“In consideration for the services rendered by Henry H. Pleasant, the client had agreed and does hereby agree to pay said Henry H. Pleasant forty per cent (40%) of whatever sums the said William Wright receives from the estate of William A. Wright; and
“Whereas, various legal transactions and dealings have and had taken place between William A. [sic] Wright and Henry H. Pleasant; and
“Whereas, said William Wright has paid to Henry H. Pleasant the sum of one thousand four hundred and forty-four & 84/100 dollars ($1,444.84), this being forty per cent (40%) of the amount which the said William Wright received, to wit: three thousand six hundred twelve & 10/100 dollars ($3,612.10).
“Now, therefore, in consideration of the payment of the sum of one thousand four hundred forty-four & 84/100 dollars ($1,444.84), the receipt of which is hereby acknowledged by Henry H. Pleasant and the sum of two thousand one hundred sixty-seven & 26/100 dollars ($2,167.26) received by William Wright, the receipt of which is hereby acknowledged, each of the said parties hereto does hereby release and forever discharge the other, his executors and administrators, from all debts, claims, demands, actions and causes of action whatsoever from the beginning of the world to the date of these presents.
“In witness whereof, the parties hereunto set their hands this day and year first above written.
“ In the presence of: (Signed) William Wright
“(Signed) Mrs. E. Skelly (Signed) Henry H. Pleasant”
Because the agreement records transactions and understandings which had already occurred, it indicates, according to the Probate Court, that William Wright had previously employed appellee, personally, as his attorney to act for and in his behalf in reference to the estate of which appellee was .then administrator; that it follows that the “legal transactions and dealings” recited in the contract could only be referable to the proceedings to determine heirship and to sell the real estate; and that the understanding as to employment between Wright and appellee, personally, was reached prior to and in eonnec *22 tion with the proceeding to determine heirship, which explained the delay until May 24 in making William Wright a party-defendant, which date was only 10 days prior to the determination of Wright as the sole heir.
The Probate Court inferred and found from the evidence the formulation of a plan by appellee to ascertain to his satisfaction the real owner of the estate of William A. Wright, and thereupon to enter into an arrangement with William Wright for appellee’s compensation upon the basis of 40 per cent of what William Wright should realize.
Appellee testified that, in connection with the hearing on the final account, he stated to the then probate judge that this was a case involving a sole heir and asked whether it would be proper for him to make his own agreement with the heir, and that the judge nodded his approval. However, appellee conceded that at no time did he disclose to the judge either the fact or the terms of his arrangement with William Wright.
The court frankly stated that it did not believe appellee’s testimony that no arrangement was made until the execution of the contract of September 20, since all the facts, including the wording of the contract in the past tense, indicated a former oral arrangement.
Because appellee made no disclosure to any of the parties before the court or to the court itself of his arrangement with William Wright to collect from him 40 per cent of what he received from the estate, the court found appellee had committed a fraud upon it and a contempt of court.
It seems to us that, regardless of whether we would have drawn the same inferences from the testimony as did the Probate Court, that court as the trier of the facts was entitled to pass upon the credibility of appellee’s testimony, and that the inferences the court drew could properly be drawn.
The Court of Appeals sustained the Probate Court in its factual findings, and, since this court does not ordinarily weigh evidence, we must take the facts as found by the two courts below.
Although ordinarily we do not weigh evidence, we do examine the record to ascertain whether there is any evidence to substantiate a finding of a court below.
*23 It is argued by appellee that there is no evidence of fraud upon his part; and that to constitute fraud the following elements must appear, to wit, a false representation, such misrepresentation must relate to a material existing fact, the person making the misrepresentation could have ascertained its falsity, the misrepresentation was intended to be relied on, and the person relying on the misrepresentation was damaged as a direct result thereof.
Do the facts as found by the Probate Court and sustained by the Court of Appeals fulfill this definition of fraud as presented by the appellee?
It is a fundamental principle of law that, where parties having different interests are involved, no lawyer can represent or receive compensation from such parties without a full disclosure, to all the parties involved, of his dual representation and the arrangements as to the compensation to be received therefrom.
Every lawyer worthy of the name learns this principle ab initio. In fact, it is indicated in the oath of office he takes upon his admission to the bar. It follows that, where one is acting as an administrator of an estate, his sole duty is to its proper administration, and he can not properly have an arrangement to represent a claimant against the estate without a full disclosure of such arrangement to the court and to all persons concerned in the estate, not only as to the terms of the arrangement but as to the compensation he is to receive therefrom.
Where one accepts an appointment as administrator of an estate he represents that he has no arrangement for compensation from any one concerned with the estate, in the absence of a full disclosure concerning such arrangement and the consent of all interested parties thereto. Certainly, such a representation relates to a material existing fact, and, if he is violating his duty, a lawyer making such representation knows of its falsity. Necessarily, the representation is intended to be relied upon, and the court in relying upon it almost inevitably makes orders, such as to fees paid from the estate, which it in all probability would not do had a full disclosure been made to it. If we must abide, as we do, by the finding of the facts by the trier thereof and as sustained by the Court of Appeals, *24 we necessarily must sustain the finding of fraud upon the court by appellee.
We come now to the matter of contempt of court.
The Probate Court found that appellee’s conduct constituted misbehavior in the presence of or so near the court as to obstruct the administration of justice, and that, therefore, it was authorized to penalize appellee summarily. (Section 2705. 01, Revised Code.)
The Court of Appeals, on the other hand, held that appellee was not guilty of any direct contempt of court so as to be liable to summary punishment, and that he could not be found guilty of contempt except as a result of a charge, in writing, filed in accordance with Section 2705.03, Revised Code, for acts specified in Section 2705.02, Revised Code.
Appellee vehemently contends that in the trial of the present case he had no intimation that anything was to be considered except the vacating of his final account, and that he had no opportunity to defend against the charge of contempt of court. He contends that as a result he has been denied due process. However, the following colloquy occurred between counsel for appellee and the Probate Court at the conclusion of the evidence on behalf of appellants:
“Mr. Corrigan: ‘If the court please, I want to make a motion at this time, that the motion of both the committee, the amici curiae, and the motion of Willis Wright, be dismissed. [Willis Wright is the executor of the estate of William Wright, deceased, from whom appellee secured 40 per cent of the proceeds received by William Wright from the estate, Willis Wright having intervened in the present hearing with a motion to recover the amount paid to appellee by William Wright, which motion the Probate Court overruled and from which no appeal has been taken.]
“ ‘But I do want the court to reserve his ruling on that motion, because I do want to have the entire matter laid before the court, so that the court will understand entirely the relationship between this estate and this lawyer, and for that reason I will call to the stand Mr. Pleasant. ’
“The Court: ‘I will reserve my ruling on your motion so that the record will be protected, and I assume that in the de *25 fense of the case, that when you offer evidence, you are keeping in mind not only — and again what I am about to say is indicative of no conclusion that is to be drawn — but you will be keeping in mind the relief asked for here about the accounting for the executor’s fees and accounting for the amount of money Mr. Pleasant received, and also along the lines that the motion invites the court to consider the matter of possible contempt.’
“Mr. Corrigan: ‘Yes.’
“The Court: ‘Very good. Had you finished?’
“Mr. Corrigan: ‘Yes, I had finished.’ ”
It seems obvious that all parties were apprised that the matter of contempt of court was being tried along with the matter of the vacation of the final account.
Appellee contends, and the Court of Appeals held, that in order to constitute a direct contempt there must be an act the court itself witnesses, conduct so close to the courtroom that the judge can not avoid seeing or hearing it, or an act in the courtroom itself such as impedes or obstructs justice.
Appellee contends that, since he expeditiously administered the estate of William A. Wright, his contract to be paid 40 per cent of the proceeds by the sole heir at law was not either an act in the presence of the court or one such as to obstruct justice.
In our opinion, a direct contempt of court is not confined to a disorderly or obstreperous act in the presence of the court itself. If the act constitutes a fraud upon the court and is such as to influence or persuade the court to make orders in its own courtroom, concerning which it probably would have done otherwise had the act not occurred, there is such an obstruction of justice as to constitute direct contempt.
It must be remembered that contempt of court is directed to the court itself rather than toward an individual judge thereof.
In the present case, if appellee had not represented a claimant against the estate of which he was administrator, he would have been entitled to receive his statutory administration fees and compensation for whatever extraordinary services he rendered, as fixed by the court. In the present case he received his statutory administration fees, made no application for at *26 torney fees, and collected 40 per cent of the net estate from the person receiving it. Appellee contends that the 40 per cent he collected was in lieu of what the court would have allowed him anyhow for attorney fees and extraordinary expenses, but the flaw in such contention is that the court must fix the amount of such fees, and the attorney has no right to make contracts with claimants against the estate for the payment of fees which he fixes.
It is certain that a full disclosure to the court of his contract with the sole heir would have had a direct bearing on the action of the court in considering appellee’s final account, and appellee was engaged in conduct obstructing justice in the court itself in failing to make a frank and full disclosure, in failing to give the court full information as to his contract with the sole heir at the time such agreement was entered into, and in failing to obtain the consent to such agreement from all parties concerned in the administration of the estate.
An act need not be in the immediate presence of the court in order to constitute direct contempt, if it tends to obstruct justice or interfere with actions of the court in the courtroom itself.
Accordingly, the judgment of the Court of Appeals is reversed in part, and the judgment of the Probate Court is affirmed.

Judgment reversed in part.

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taft, JJ., concur.